[No. 20829-6-II. Division Two. November 26, 1997.]

TOM GALBRAITH, *Appellant,* v. TAPCO CREDIT UNION, ET AL., *Respondents.*

940

*Richard H. Wooster* of *Mann, Johnson, Wooster & McLaughlin, P.S.*, for appellant.

*Susan E. Keers*, for respondents.

Hunt, J. — Tom Galbraith appeals the trial court's summary judgment dismissal of his claims against TAPCO Credit Union (TAPCO) for retaliatory discrimination, violation of Washington's Consumer Protection Act, defamation, and wrongful expulsion. We reverse dismissal of his retaliatory discrimination claim, consumer protection claim, and claim that TAPCO did not have cause to expel him pursuant to RCW 31.12.295. We affirm dismissal of his defamation claim.

## FACTS

### A. TAPCO Termination

Tom Galbraith became a member of TAPCO Credit Union[1] in 1989 or 1990. He first joined TAPCO so he could "legitimately participate in affairs as a member of that credit union." Throughout his membership, Galbraith used TAPCO to cash checks and to deposit money. He never had a safe deposit box, nor did he borrow money or seek credit through TAPCO.

During 1993, several employees filed an action against TAPCO in federal court, *Barnes v. TAPCO*, (No. C92-5259B), asserting employment discrimination during a Reduction in Force (RIF) because of age and gender in violation of both federal and state law. Galbraith submitted a supportive declaration, which the em-

---

[1] Galbraith was and is not an employee of TAPCO.

ployees used to defeat TAPCO's motion for summary judgment. Galbraith was also deposed by TAPCO's attorneys and listed in the pretrial order as a witness for the plaintiff employees. In September 1993, TAPCO and the employees settled.

In July and August 1993, Galbraith alleged that the Board of Directors of TAPCO (the Board) had considered in June the following resolution:

TAPCO . . . agrees and contracts to indemnify and reimburse [the former president of TAPCO] for expenses and costs actually and necessarily incurred in connection with any pending or threatening action. Such actions shall include, but are not limited to, matters directly and indirectly relating to oral and written threats, acts of defamation and extortion attempts by the following individuals or their agents: . . . Mr. Tom Galbraith . . . .

There is no evidence that this resolution was ever published in any official Board minutes. In fact, Galbraith testified that he has "no way of knowing what the distribution of that document [the resolution] has been." There is no evidence that the contents of the above resolution were communicated to Galbraith's employer or adversely affected his ability to attract consulting work. But after hearing rumors that the Board had accused him of extortion, Galbraith requested that the Board print the resolution and a retraction in their official minutes.

In November 1993, TAPCO terminated Galbraith's membership with TAPCO for the following reasons:

1. **Engaged in Conduct Adverse to the interests of TAPCO Credit Union.** You voluntarily assisted plaintiffs that had or have pending law suits against TAPCO Credit Union. You have been openly critical of the TAPCO management. You have accused the Board of Directors of TAPCO of criminal conduct. You have contacted a competitor of TAPCO concerning TAPCO Credit Services use of the name "CU Mortgage[.]"

2. **Damaged or potentially damaged TAPCO Credit**

Union's reputation with the State regulatory authority. Much of the information identified as adverse to the interest of TAPCO you sent to the State Regulatory Authority. This could create the impression that TAPCO management and Board are incompetent or worse. While a member of TAPCO you have also been openly critical of those in authority at the Division of Savings and Loan which could potentially damage TAPCO's reputation, especially if the Division felt that there was at least tacit approval of that criticism by TAPCO.

3. **Damaged or potentially damaged TAPCO's reputation with the Washington Credit Union League.** While a member of TAPCO you have contacted the Washington Credit Union League to enlist their support in a campaign to discredit the Division of Savings and Loans and its former Supervisor, a position the League clearly disfavored. Your position damages or potentially damages TAPCO's reputation with the League particularly if they felt there was at least tacit approval of your position by TAPCO.

4. **Misappropriation of TAPCO property.** You took a TAPCO file in the possession of TAPCO's former counsel Steve Levy.

5. **Interference with the management of TAPCO.** You have made numerous requests of TAPCO management which has [sic] diverted time, money, and resources from running the Credit Union to responding to your demands and the State inquiries of your demands.

6. **Never established a true banking relationship with TAPCO — created a loss to the Credit Union in time and resources disproportionate to the financial commitment of the member.** You have made numerous request of the TAPCO Board and in particular the TAPCO CEO . . . . The time, money, and resources TAPCO has devoted in formulating a response have greatly outweighed any reasonable inquiry for a member with minimal financial commitment.

In response to Galbraith's request for clarification, TAPCO elaborated upon the first ground in a letter dated February 9, 1994: "You voluntarily and actively participated on behalf of the plaintiffs in the Reduction in Force (RIF) lawsuit against TAPCO Credit Union."

Galbraith denied TAPCO's allegations and appealed his expulsion to the Board. The Board allowed Galbraith an opportunity to present evidence on appeal, but it terminated a continued hearing when Galbraith refused to stop tape-recording the proceedings. The Board denied Galbraith's request for reinstatement.

## B. Procedure

In October 1994, Galbraith filed an amended complaint against TAPCO and several Board Directors, including Alonzo and Debbie Hampton (the Directors). Galbraith alleged: (1) that TAPCO violated Washington's Law Against Discrimination (WLAD) when it expelled Galbraith for assisting TAPCO employees in the *Barnes v. TAPCO* antidiscrimination lawsuit; (2) that TAPCO's violation of the WLAD constituted a per se violation of Washington's Consumer Protection Act; (3) that TAPCO defamed Galbraith when it suggested in its June 1993 resolution that Galbraith had committed extortion; and (4) that TAPCO did not have cause, as required by RCW 31.12.295, to expel Galbraith from the credit union. The trial court entered two separate orders dismissing Galbraith's claims on summary judgment.

Galbraith appeals the order dismissing his claim against TAPCO and the Hamptons. He argues that trial court erroneously: 1) found RCW 49.60.210[2] inapplicable because Galbraith was not an employee of TAPCO and had not engaged in any credit transactions with TAPCO; 2) dismissed his defamation claim; and 3) found TAPCO had cause for expelling Galbraith as required by RCW 31-.12.295.

## ANALYSIS

■ The appellate court reviews summary judgment de novo, treating all facts and inferences therefrom in a light

[2]RCW 49.60.210 prohibits retaliation against any person who assists in antidiscrimination proceedings.

most favorable to the nonmoving party. *Fell v. Spokane Transit Auth.*, 128 Wn.2d 618, 625, 911 P.2d 1319 (1996) (citing *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994)). The inquiry is "whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law." *Marquis v. City of Spokane*, 130 Wn.2d 97, 105, 922 P.2d 43 (1996) (citing *Schaaf v. Highfield*, 127 Wn.2d 17, 21, 896 P.2d 665 (1995)). "[W]here reasonable minds could reach but one conclusion from the admissible facts in evidence, summary judgment should be granted." *Marquis*, 130 Wn.2d at 105 (citing CR 56(c); *LaMon v. Butler*, 112 Wn.2d 193, 199, 770 P.2d 1027 (1989)).

### A. Washington's Law Against Discrimination

#### 1. Establishing Cause of Action — Retaliatory Discrimination

RCW 49.60.210 prohibits retaliation against persons who oppose discriminatory practices or assist in anti-discrimination proceedings.[3] Washington state courts have not addressed whether RCW 46.60.210 applies in the absence of an employment relationship.

■ A statute clear on its face is not subject to judicial interpretation. We interpret a statute that is unclear, and thus subject to judicial interpretation, in the manner that best fulfills legislative purpose and intent. *Marquis*, 130 Wn.2d at 107.

The purpose of WLAD is codified at RCW 49.60.010 as follows:

> It is an exercise of the police power of the state for the protection of the public welfare, health, and peace of the people of this state, and in fulfillment of the provisions of the Constitution of this state concerning civil rights. The legislature hereby finds and declares that practices of discrimination

---

[3] A history of the evolution of the WLAD can be found in Justice Talmadge's dissent in *Griffin v. Eller*, 130 Wn.2d 58, 74-97, 922 P.2d 788 (1996).

against any of its inhabitants because of race, creed, color, national origin, families with children, *sex*, marital status, *age*, or the presence of any sensory, mental, or physical disability . . . are a matter of state concern, that such discrimination threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state.[4]

(Emphasis added).

WLAD guarantees:

(1) The right to be free from discrimination because of race, creed, color, national origin, *sex*, or the presence of any sensory, mental, or physical disability . . . . This right shall include, but not be limited to:

. . . .

(b) The right to the full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place of public resort, accommodation, assemblage, or amusement;

. . . .

(d) The *right to engage in credit transactions* without discrimination . . . .[5]

---

[4]To accomplish these purposes, the Legislature created a state agency, the Human Rights Commission, empowered to eliminate and to prevent

discrimination in employment, in credit and insurance transactions, in places of public resort, accommodation, or amusement, and in real property transactions because of race, creed, color, national origin, families with children, *sex*, marital status, *age*, or the presence of any sensory, mental, or physical disability . . . .

RCW 49.60.010 (emphasis added).

[5]RCW 49.60.175, describing "Unfair practices of financial institutions," provides that:

It shall be an unfair practice to use the sex, race, creed, color, national origin, marital status, or the presence of any . . . disability of any person . . . concerning an application for credit in any credit transaction to determine the credit worthiness of an applicant.

RCW 49.60.176 goes on to describe "Unfair practices with respect to credit transactions" as follows:

(1) It is an unfair practice for any person whether acting for himself, herself, or another in connection with any credit transaction because of race, creed,

. . . .

(f) The *right to engage in commerce* free from any discriminatory boycotts or blacklists . . . .

RCW 49.60.030 (emphasis added).[6]

RCW 49.60.030(3) also deems as an "unfair practice" various discriminatory acts, including sex discrimination, "committed in the in the course of trade or commerce as defined in the Consumer Protection Act, chapter 19.86 RCW . . . ."[7]

a. *"Unfair Practice"*

 Galbraith brings his retaliatory discrimination claim under RCW 49.60.210, which provides:

It is an *unfair practice* for any employer, employment agency, labor union, or other *person* to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden by this chapter, or because he or she has filed a charge, *testified*, or *assisted in any proceeding under this chapter.*

---

color, national origin, sex, marital status, or the presence of any sensory, mental, or physical disability or the use of a trained guide dog or service dog by a disabled person:

(a) To deny credit to any person;

(b) To increase the charges or fees for or collateral required to secure any credit extended to any person;

(c) To restrict the amount or use of credit extended or to impose different terms or conditions with respect to the credit extended to any person or any item or service related thereto;

(d) To attempt to do any of the unfair practices defined in this section.

(2) Nothing in this section shall prohibit any party to a credit transaction from considering the credit history of any individual applicant.

(3) Further, nothing in this section shall prohibit any party to a credit transaction from considering the application of the community property law to the individual case or from taking reasonable action thereon.

[6]The parties do not contend and we see nothing in the statute that requires exhaustion of administrative remedies with the Human Rights Commission (HRC) prerequisite to filing a lawsuit under the statute.

[7]This wording is included in three versions of RCW 49.60.030(3): the 1984 version and the 1993 and 1995 amendments.

RCW 49.60.210 (emphasis added). RCW 49.60.210 expressly includes within its definition of "unfair practice," discrimination against a person opposing an "unfair practice" or rendering assistance in a separate WLAD proceeding.

Galbraith does not claim that he was discriminated against because of *his* sex, race, creed, color, or other illegal basis specified in RCW 49.60.030. Rather he argues that TAPCO discriminated against him because he assisted TAPCO employees in their RCW 49.60.180(2) age and gender discrimination lawsuit against TAPCO: Galbraith was deposed and listed as a potential trial witness; he also signed a supportive declaration. TAPCO acknowledged Galbraith's participation in that lawsuit as a primary reason for expelling him from the credit union, and the trial court so found.

Galbraith has thus established a prima facie "unfair practice" under this section.

b. *Lack of Employment Relationship*

The trial court is correct that Washington cases interpreting RCW 49.60.210 have generally involved employee claims against employers. But neither the plain language of the statute nor case law supports TAPCO's argument and the trial court's ruling that Galbraith cannot sustain a RCW 49.60.210 claim on grounds 1) that he had no employment relationship with TAPCO, or 2) that the act is contained within that portion of the RCW entitled "Labor Regulations." *See Allison v. Housing Auth.*, 118 Wn.2d 79, 821 P.2d 34 (1991); *Schonauer v. DCR Entertainment*, 79 Wn. App. 808, 905 P.2d 392 (1995), *review denied*, 129 Wn.2d 1014 (1996). Such limited construction would be contrary to the Legislature's mandate to construe the WLAD liberally, RCW 49.60.020, and to avoid any construction that would narrow coverage of this law. *Marquis*, 130 Wn.2d at 105.

Analyzing the scope of RCW 49.60.030, the Washington Supreme Court in *Marquis* held that an independent contractor could maintain a claim under the broad protections of WLAD, despite the absence of a true employment

relationship. *Marquis*, 130 Wn.2d at 107. The court reasoned that this opening language of RCW 49.60.030 does not limit actionable claims to those listed in the statute: "The right to be free from discrimination because of . . . sex . . . . *shall include, but not be limited to*," followed by a list of specific rights. (Emphasis added.) Juxtaposing the state WLAD with the comparable federal act, the Supreme Court noted:

> Unlike our state law against discrimination, Title VII is limited to employment discrimination. Unlike our state law against discrimination, Title VII does not contain a broad statement of the right to be free of discrimination in other areas. Our state law does. RCW 49.60.010. . . . [T]here is no provision in the federal law which sets forth the equivalent of the broad language of RCW 49.60.030(1) and there is no statutory provision requiring liberal construction . . . .

*Marquis*, 130 Wn.2d at 110-11. The negative implication of this comparison is that because WLAD is not like federal Title VII,[8] WLAD is not limited to employment discrimination but rather guarantees the right to be free of discrimination in nonemployment settings as well.

In spite of its location within the RCW "Labor Regulations" title, chapter 49.60 (WLAD) is specifically entitled "Discrimination—Human Rights Commission" and covers many situations other than employment, such as credit, travel, insurance, real estate transactions, etc. Nothing in its title or content limits the WLAD to labor or employer-employee relations. Nor is there elsewhere any indication that the Legislature intended the WLAD to be so narrowly construed. Rather unfair practices in employment are specifically delineated in a separate section, RCW 49.60.010. *Marquis*, 130 Wn.2d at 110-11.[9]

Moreover, in spite of the lack of an employment rela-

---

[8]Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (1994).

[9]*See also* the post-*Marquis* amendments to RCW 49.60.030(3), expressly including as "unfair practices" discriminatory, nonemployer/employee commercial practices in violation of the Consumer Protection Act.

tionship between Galbraith and TAPCO, Galbraith's assistance to the TAPCO employees' discrimination claim against TAPCO was directly related to *their* employment relationship with TAPCO. Thus Galbraith's actions were labor-related, albeit derivative.

TAPCO argues that if we do not confine WLAD to direct employment relationships, a Pandora's box of private actions may become actionable. We need not reach the myriad ways in which TAPCO might have retaliated against Galbraith for his antidiscrimination assistance to TAPCO's employees. We have before us simply TAPCO's termination of Galbraith's credit union membership because he assisted with a legitimate antidiscrimination labor lawsuit.

### c. *TAPCO — "Person" Prohibited From Discriminating*

The plain language of RCW 49.60.210 supports the conclusion that the WLAD is not limited to claims by employee against employer. Under RCW 49.60.210 "unfair practices" can be committed, not only by employers, but also by any "other person." The RCW 49.60.040 definition of "person"[10] broadly includes any "associations," "organizations," "cooperatives," or "any group of persons"; a credit union such as TAPCO clearly falls within these categories.

The broad language of RCW 49.60.210, the Legislature's mandate for liberal construction, and the strong public policy against discriminatory practices, support the conclusion that Galbraith has an actionable claim against TAPCO for retaliatory discrimination.

---

[10]RCW 49.60.040 provides:

"Person" includes one or more individuals, partnerships, associations, organizations, corporations, cooperatives, legal representatives, trustees and receivers, or any group of persons; it includes any owner, lessee, proprietor, managers, agent, or employee, whether one or more natural persons; and further includes any political or civil subdivisions of the state and any agency or instrumentality of the state or of any political or civil subdivisions thereof . . . .

## 2. Surviving Summary Judgment

█ Having decided as a matter of law that Galbraith may bring a retaliatory discrimination action against TAPCO, we next determine whether Galbraith has made a sufficient showing to support such claim. To defeat summary judgment Galbraith must be able to demonstrate that (1) he opposed practices prohibited under WLAD or assisted with an antidiscrimination proceeding brought under WLAD; and (2) retaliation for this protected activity was a substantial factor behind TAPCO's decision to expel him. *Allison v. Housing Auth.*, 118 Wn.2d 79, 95, 821 P.2d 34 (1991)(citing *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 821 P.2d 18 (1991)); RCW 49.60.210. Galbraith has offered evidence that he assisted TAPCO employees with their antidiscrimination lawsuit against TAPCO and that his assistance was a factor in TAPCO's terminating his membership. Galbraith has thus established a prima facie case giving rise to an "inference of discrimination." *Marquis,* 130 Wn.2d at 114. TAPCO has offered evidence that, in addition to its discriminatory reason, it also expelled Galbraith for legitimate non-discriminatory reasons.

Thus there are factual issues regarding Galbraith's retaliatory discrimination claim; summary judgment was inappropriate. We reverse and remand for trial, at which Galbraith "retains the final burden of persuading the trier of fact that discrimination was a substantial factor in [his] disparate treatment." *Marquis,* 130 Wn.2d at 114.

## B. Washington's Consumer Protection Act

RCW 49.60.030(3) provides that certain acts prohibited by the WLAD, including sex discrimination, "committed in the course of trade or commerce," are deemed unfair practices for purposes of the Consumer Protection Act, RCW 19.86.[11]

---

[11]*See* note 7.

■ To prove a violation of Washington's Consumer Protection Act, a plaintiff must show that the defendant's act or practice is (1) unfair or deceptive, (2) occurs in the conduct of any trade or commerce, (3) has impact on the public interest; and (4) causes (5) injury to plaintiff in his or her business or property. *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

■ Galbraith has established a derivative WLAD claim related to sex discrimination for TAPCO's retaliation against him for assisting the TAPCO employees' sex-discrimination lawsuit. As with Galbraith's WLAD claim for retaliatory discrimination, we find that Galbraith has also raised issues of fact concerning essential elements of a claim under Washington's Consumer Protection Act. Accordingly, summary judgment on this claim was also improper.

C. Galbraith's Remaining Theories Under WLAD

With the exception of RCW 49.60.210, causes of action under WLAD can be sustained only by plaintiffs who fall within the definition of persons protected under RCW 49.60. *See* RCW 49.60.030. Other than as one who assisted discrimination claims of others, Galbraith has not demonstrated that he is within a class protected by WLAD.[12] He never borrowed money from TAPCO or engaged in credit transactions as defined in RCW 49.60.030 and 49.60.176.

---

[12]Galbraith relies on other provisions of the WLAD to support his discrimination claims against TAPCO: RCW 49.60.030(1)(d), which protects the right to engage in credit transactions without discrimination; RCW 49.60.040, a definitional section of WLAD; and RCW 49.60.176, which prohibits unfair practices in credit transactions. Galbraith has not substantiated a claim for discrimination in "credit transactions" under RCW 49.60.030(1)(d), which are statutorily confined to such transactions as loans, installment sales, and financing. They do not include checking or savings account transactions of the type in which Galbraith engaged. As the trial court noted, there was no showing that Galbraith engaged or attempted to engage in any credit transaction with TAPCO.

Accordingly, Galbraith's remaining theories under WLAD are without merit.

### D. Cause for Termination of Membership

A credit union cannot expel a member without cause. RCW 31.12.295 provides:

> **Expulsion of member by board.** (1) The board may, by a two-thirds vote, expel a member for cause. The board shall notify the member of the expulsion and the reasons upon which it is based. The board shall, upon request of the expelled member, allow the member to challenge the expulsion and seek reinstatement as a member.

RCW 31.12.295 does not define "cause,"[13] nor is legislative guidance provided elsewhere.[14]

Galbraith urges this court to adopt the definition of "just cause" applied in employment termination cases, as set forth in *Baldwin v. Sisters of Providence in Wash., Inc.*, 112 Wn.2d 127, 139, 769 P.2d 298 (1989):

> "just cause" is a fair and honest cause or reason, regulated by good faith on the part of the party exercising the power. We further hold a discharge for "just cause" is one which is not for any arbitrary, capricious, or illegal reason and which is one based on facts (1) supported by substantial evidence and (2) reasonably believed by the employer to be true.

 Whether we adopt the *Baldwin* definition or construct a different definition for WLAD purposes, we note that the Legislature could not have intended "just cause" for discharge to include assisting others with a

---

[13]RCW 31.12.275 defines "cause" only for removal of officers by the Board. Similarly newly amended section 285 will define "cause" only for suspension of Board members. RCW 31.12.285, amended by SSB 5563, LAWS OF 1997, ch. 397 (effective January 1, 1998).

[14]Effective January 1, 1998, amended RCW 31.12.255(1)(d) empowers the Board to "[e]stablish "the conditions under which a member may be expelled for cause." SSB 5563, LAWS OF 1997, ch. 397. Passage of this amendment suggests the Legislature's acknowledged lack of an existing statutory definition of "cause" for expulsion of a credit union member.

WLAD claim. To hold otherwise would sanction illegal discriminatory conduct and would be contrary to the Legislature's clearly enunciated policy and mandate to construe the Act broadly.

We find issues of fact regarding whether the Board had "just cause" to expel Galbraith from the TAPCO credit union. Even if TAPCO can show some legal reasons for Galbraith's expulsion, nevertheless it is uncontroverted that a primary reason was an illegal reason — Galbraith's assisting the RIF'd employees in their WLAD action against TAPCO. Summary judgment on Galbraith's wrongful expulsion claim was therefore improper.

## E. Defamation

█ "[A] defamation claim may not go to the jury . . . if the statement on which it is based . . . was not 'published' (i.e., communicated) to anyone other than the plaintiff." *Schmalenberg v. Tacoma News, Inc.*, 87 Wn. App. 579, 943 P.2d 350, 362 (1997).[15]

█ Galbraith admits there was no evidence that the allegedly defamatory statement (the Board resolution) was published or communicated to anyone outside the Board meeting in June 1993.[16] Rather the Board passed a resolution declaring its actions to be confidential. Galbraith instead bases his defamation claim on his own request that the resolution appear in the official minutes, which request was never granted. Galbraith contends that his request to publish the resolution satisfies the element of unprivileged communication under the doctrine of self-publication.

But, as TAPCO notes, the Supreme Court rejected the doctrine of self-publication in *Lunz v. Neuman*, 48 Wn.2d

---

[15]*Citing Pate v. Tyee Motor Inn, Inc.*, 77 Wn.2d 819, 821, 467 P.2d 301 (1970); *Haueter v. Cowles Publ'g Co.*, 61 Wn. App. 572, 578, 811 P.2d 231(1991); *Corbin v. Madison*, 12 Wn. App. 318, 325, 529 P.2d 1145 (1974); Restatement (Second) Of Torts § 577, § 671(a) (1976); 16 David K. Dewolf & Keller W. Allen, Washington Practice: Tort Law and Practice, § 12.11 at 285 n. 21 (1993).

[16]Galbraith has also failed to offer any evidence of damages.

26, 33, 290 P.2d 697 (1955). More recently this court also rejected the doctrine of self-publication in *Hill v. J.C. Penney, Inc.*, 70 Wn. App. 225, 239, 852 P.2d 1111 (1993), in which we held that "publication by the 'defamed' person does not create liability." *Hill*, 70 Wn. App. at 239 (citing *Lunz*, 48 Wn.2d at 33-34).

Accordingly, summary judgment dismissing Galbraith's defamation claim was proper.

### F. Attorney Fees

Galbraith requests attorney fees pursuant to RAP 18.1, citing RCW 49.60.030(2), which provides:

> [a]ny person deeming himself or herself injured by any act in violation of this chapter [WLAD] shall have a civil action in a court of competent jurisdiction to enjoin further violations, or to recover the actual damages sustained by [him] . . . together with the cost of suit including reasonable attorneys' fees . . . .

*See also Herring v. Department of Soc. & Health Servs.*, 81 Wn. App. 1, 35, 914 P.2d 67 (1996). Galbraith also relies on the Washington Consumer Protection Act, which states:

> Any person who is injured in his or her business or property by a violation of RCW 19.86.020, 19.86.030, 19.86.040, 19.86.050, or 19.86.060, or any person so injured because he or she refuses to accede to a proposal for an arrangement which, if consummated, would be in violation of RCW 19.86.030, 19.86.040, 19.86.050, or 19.86.060, may bring a civil action in the superior court to enjoin further violations, to recover the actual damages sustained by him or her, or both, together with the costs of the suit, including a reasonable attorney's fee . . . .

RCW 19.86.090

Because we vacate summary judgment and remand for trial on Galbraith's WLAD claim, he may seek attorney fees pursuant to RCW 49.60.030(2) if he prevails.

### CONCLUSION

We reverse the dismissal of Galbraith's retaliatory

discrimination claim, Washington Consumer Protection Act claim, and claim that TAPCO did not have "cause" to expel him pursuant to RCW 31.12.295; we remand these claims for trial. We affirm dismissal of his defamation claim. We leave open for the trial court any award of attorney fees, pending the outcome of Galbraith's reinstated action on remand.

HOUGHTON, C.J., and SEINFELD, J., concur.

Reconsideration granted and opinion modified December 12, 1997.

Review denied at 135 Wn.2d 1006 (1998).