IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CAPTAIN BRUCE NELSON, | No. 68701-8-I |
| Appellant, | |
| v. | DIVISION ONE |
| STATE OF WASHINGTON and WASHINGTON STATE BOARD OF PILOTAGE COMMISSIONERS, | UNPUBLISHED OPINION |
| Respondents. | FILED: October 28, 2019 |

CHUN, J. — After the Washington State Board of Pilotage Commissioners (Board) denied Captain Bruce Nelson a pilot's license, he contested the decision in an administrative proceeding. An administrative law judge (ALJ) upheld the decision. Nelson then filed this civil suit under the Washington Law Against Discrimination, chapter 49.60 RCW (WLAD). The trial court granted summary judgment for the State of Washington and the Board determining that (1) res judicata and collateral estoppel barred Nelson's WLAD claims, (2) the Administrative Procedure Act, chapter 34.05 RCW (APA) barred any challenges to the administrative proceeding, (3) Nelson did not establish a prima facie case of age, gender, or disability discrimination, and (4) the administrative record did not support his emotional distress claims. Though the court erred by determining that res judicata and collateral estoppel applied, we affirm because Nelson fails to raise a genuine issue of material fact on his age discrimination claim and he abandoned his other claims.

# I. BACKGROUND

After the Board denied Nelson a pilot's license, he pursued both administrative and civil relief. Previously, we addressed Nelson's appeal of the administrative case and affirmed the superior court order upholding the Board's final order denying Nelson a license. Nelson v. Wash. Bd. of Pilotage Comm'rs, No. 75559-5-I, (Wash. Ct. App. Dec. 11, 2017) (unpublished) http://www.courts.wa.gov/opinions/pdf/755595.pdf ("Administrative Appeal"). The opinion from the Administrative Appeal contains a recitation of the underlying facts. This opinion presents a general overview and provides additional facts as necessary.

## A. Nelson's Training

Nelson began his pilot training with the Board in January 2007. After seven months and over 100 training trips under the supervision of licensed pilots, the Training Evaluation Committee (TEC)[1] reviewed Nelson's performance. During these first seven months, Nelson had eight documented interventions. An "intervention" is when a supervising pilot must take over the ship to prevent damage or stop a dangerous situation from developing. The Board voted to extend Nelson's training program by two months.

Nelson's first extension occurred from July to September 2007. During this extension, Nelson had three interventions. The Board again voted to extend Nelson's training.

Nelson's second extension lasted until October 2007. In this extension, Nelson had three interventions and the Board again extended his training until December 2007.

---

[1] The TEC is a committee that the Board designated to manage the training program.

In this third extension, Nelson had two interventions. After this extension, Nelson contracted an illness and the Board extended his training program again in January 2008.

In January 2008, the Board decided to extend Nelson's training for four more months. During this extension, Nelson participated in a trip involving the Pier 86 grain terminal. On this trip, "a senior supervising pilot—and member of the [TEC]—was forced to intervene in Nelson's tugging of the grain ship in order to avoid substantial damage to the grain terminal and to the ship."

After Nelson's fifth extension, the TEC unanimously recommended that the Board not license Nelson.

B. The Civil Action

On September 9, 2010, while Nelson pursued administrative relief, he filed a civil action against the defendants. In his complaint, Nelson alleged the defendants (1) violated WLAD by discriminating against him based on age, perceived disability, and possibly gender, and by retaliating against him, (2) violated the APA, and (3) negligently and/or intentionally inflicted emotional distress.

The defendants moved for summary judgment on September 23, 2011. The defendants argued (1) res judicata barred Nelson's claims that the defendants failed to comply with the APA, (2) collateral estoppel applied to the administrative decision to prevent relitigation of the facts, (3) Nelson did not establish a prima facie case for any of his discrimination claims, and (4) the remaining tort claims lacked merit. Nelson opposed the motion.

On January 13, 2012, the court held a hearing where it determined that a certified administrative record should be a part of the court file; it requested the parties reach an agreement on the contents. The court heard oral argument on February 3, 2012.

On March 28, 2012, the trial court granted summary judgment in favor of the defendants. The court concluded that res judicata barred Nelson's claims[2] and collateral estoppel applied to the ALJ's findings and conclusions. Relying on the ALJ's findings, the trial court held Nelson did not establish a prima facie case of age, gender, or disability discrimination. Finally, the court dismissed Nelson's emotional distress claim as unsupported by the administrative record.

Nelson moved for reconsideration on April 9, 2012. On May 3, 2012, the court denied the motion. Nelson appeals.[3]

## II. ANALYSIS

### A. Res Judicata

Nelson argues the trial court erred by deciding res judicata bars his WLAD claims. The defendants do not present any argument on this issue. We agree with Nelson.

We review de novo the legal question of whether res judicata applies. Atl. Cas. Ins. Co. v. Or. Mut. Ins. Co., 137 Wn. App. 296, 302, 153 P.3d 211 (2007). Res judicata prevents a party from relitigating claims from prior actions. Civil Serv. Comm'n v. City of

---

[2] Though the defendants argued that res judicata applied to Nelson's APA claims, the trial court's order appears to apply the doctrine to all of Nelson's claims, including those under WLAD.

[3] We stayed this matter until the parties resolved the administrative case on June 29, 2018. Our Supreme Court further stayed this case in connection with Nelson's motion to supplement the record, which stay was lifted on March 6, 2019.

Kelso, 137 Wn.2d 166, 171, 969 P.2d 474 (1999). When determining whether two causes of action are identical such that res judicata bars the second action, courts generally consider:

> (1) [w]hether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

Rains v. State, 100 Wn.2d 660, 664, 674 P.2d 165 (1983). The party arguing that res judicata applies bears the burden of proof. Ensley v. Pitcher, 152 Wn. App. 891, 902, 222 P.3d 99 (2009). "[R]es judicata will not operate if . . . evidence needed to establish a necessary fact would not have been admissible in the prior proceeding." Kelly-Hansen v. Kelly-Hansen, 87 Wn. App. 320, 331, 941 P.2d 1108 (1997).

A plaintiff overcomes a motion for summary judgment in a discrimination case if they show "that a reasonable jury could find that discrimination was a substantial factor in the employer's adverse employment action." Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas County, 189 Wn.2d 516, 528, 404 P.3d 464 (2017). A plaintiff establishes a rebuttable presumption that precludes summary judgment in retaliation cases if they establish that they participated in statutorily protected opposition activity, the employer knew about that opposition activity, and the employer then discharged the plaintiff. Currier v. Northland Servs., Inc., 182 Wn. App. 733, 747, 332 P.3d 1006 (2014). "Proof of different treatment by way of comparator evidence is relevant and admissible" in WLAD cases. Johnson v. Chevron U.S.A., Inc., 159 Wn. App. 18, 33, 244 P.3d 438 (2010).

5

Here, the ALJ ruled the performance of other pilots was not sufficiently probative and excluded witnesses "being called solely for or questioned regarding the performance of other pilots." The ALJ stated, "[T]he issue before me is Captain Nelson's pilotage training and I'm convinced that that case can be made with the record that we have, without the other pilots, because the issue that I have to decide is whether it was arbitrary and capricious and not whether it was different."

The ALJ excluded comparator evidence that Nelson offered. This category of evidence is relevant and admissible in WLAD cases. Thus, evidence needed to establish a necessary fact in Nelson's WLAD case was not admitted in the administrative proceeding. Because the ALJ did not allow Nelson to present this evidence, res judicata does not bar his WLAD claims. See Kelly-Hansen, 87 Wn. App. at 331.

B. Collateral Estoppel

Nelson asserts the trial court erred by determining collateral estoppel applies to the ALJ's factual findings because there is no identity of issues and such an application would work an injustice. The defendants respond that the trial court correctly applied collateral estoppel. We decide collateral estoppel does not apply because its application would work an injustice.

We review de novo whether collateral estoppel bars relitigation of an issue. Billings v. Town of Steilacoom, 2 Wn. App. 2d 1, 14, 408 P.3d 1123 (2017).

Collateral estoppel prevents parties from relitigating issues that a prior proceeding addressed and finally decided. Christensen v. Grant County Hosp. Dist. No. 1, 152 Wn.2d 299, 305, 96 P.3d 957 (2004). Collateral estoppel may apply to actions

brought under Washington's antidiscrimination laws. Billings, 2 Wn. App. 2d at 23.

Additionally, under Washington law, administrative decisions may have preclusive

effect. Reninger v. Dep't of Corrs., 134 Wn.2d 437, 449, 951 P.2d 782 (1998).[4]

> A party asserting collateral estoppel bears the burden of proving:
>
> (1) the issue decided in the prior adjudication is identical with the one presented in the second action; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with the party to the prior adjudication; and (4) application of the doctrine does not work an injustice.

Thompson v. Dep't of Licensing, 138 Wn.2d 783, 790, 982 P.2d 601 (1999); State v.

Williams, 132 Wn.2d 248, 254, 937 P.2d 1052 (1997) ("The party asserting collateral

estoppel bears the burden of proof.").

The injustice prong primarily concerns procedural inequality. Christensen, 152

Wn.2d at 309. The "party against whom the doctrine is asserted must have had a full

and fair opportunity to litigate the issue in the earlier proceeding." Christensen, 152

Wn.2d at 307. Thus, even if a court makes an error of law, collateral estoppel may

apply so long as a party fully litigated the issue and "did not attempt to overturn [the]

adverse outcome." Thompson, 138 Wn.2d at 799-800.

Courts consider four factors when deciding whether collateral estoppel would

work an injustice, namely whether:

1. The plaintiff had the incentive to adopt a "wait and see" attitude in the hope that the first action by another plaintiff would result in a favorable judgment that might then be used against the losing defendant;

---

[4] We note that for collateral estoppel to apply, an administrative decision must satisfy three additional elements: "(1) whether the agency acted within its competence, (2) the differences between procedures in the administrative proceeding and court procedures, and (3) public policy considerations." Christensen, 152 Wn.2d at 308. But because we determine Nelson demonstrates that the administrative proceeding does not satisfy the initial elements for collateral estoppel, we do not address these.

2. The defendant had the incentive to defend the first suit with full vigor, especially when future suits are not foreseeable;

3. One or more judgments entered before the one invoked as preclusive are inconsistent with the latter or each other, suggesting that reliance on a single adverse judgment would be unfair; and,

4. The defendant might be afforded procedural opportunities in the later action that were unavailable in the first and that could readily cause a different result.

State Farm Fire & Cas. Co. v. Ford Motor Co., 186 Wn. App. 715, 725, 346 P.3d 771 (2015). Under the fourth factor, "the opportunity to introduce evidence not before the fact finder in the prior action is a new procedural opportunity that precludes application of collateral estoppel." State Farm, 186 Wn. App. at 725-26.

As mentioned above, the ALJ excluded certain comparator evidence. The comparator evidence was potentially critical to Nelson's WLAD claims because it could establish that the Board treated Nelson differently than trainees outside his protected categories. For this reason, the trial court erred in ruling collateral estoppel applied to the ALJ's factual findings.

C. Age Discrimination

Nelson asserts the trial court erred by granting summary judgment for the defendants on his age discrimination claim. The defendants contend Nelson failed to establish a genuine issue that his age played a role in the Board's decision to not license him. We agree with the defendants.

A trial court properly grants summary judgment when a party fails to present a genuine issue of material fact. CR 56(c); Billings, 2 Wn. App. 2d at 14. "The appellate court engages in the same inquiry as the trial court, with questions of law reviewed de

novo and the facts and all reasonable inferences from the facts viewed in the light most favorable to the nonmoving party." Billings, 2 Wn. App. 2d at 14.

Because of the difficulty a plaintiff faces to prove discriminatory motive, courts should rarely grant summary judgment for an employer in employment discrimination cases. Mikkelsen, 189 Wn.2d at 527-28.

WLAD prohibits employers from taking an adverse employment action on the basis of a protected characteristic, such as age. RCW 49.60.180(2); see also Mikkelsen, 189 Wn.2d at 526. To survive summary judgment, a plaintiff must demonstrate "a reasonable jury could find that the plaintiff's protected trait was a substantial factor motivating the employer's adverse actions." Scrivener v. Clark Coll., 181 Wn.2d 439, 445, 334 P.3d 541 (2014). To demonstrate the protected characteristic served as a substantial factor, the plaintiff needs to show "that the protected characteristic was a significant motivating factor bringing about the employer's decision." Scrivener, 181 Wn.2d at 445. The plaintiff has a burden of production, not persuasion, and may prove discrimination through direct or circumstantial evidence. Scrivener, 181 Wn.2d at 444.

1. Direct Evidence

To establish a prima face case of discrimination under the direct evidence test, the plaintiff must provide direct evidence establishing "(1) the defendant employer acted with a discriminatory motive and (2) the discriminatory motivation was a significant or substantial factor in an employment decision." Alonso v. Qwest Commc'ns Co., 178 Wn. App. 734, 744, 315 P.3d 610 (2013). Direct evidence "includes discriminatory statements by a decision maker and other 'smoking gun' evidence of discriminatory

motive." Fulton v. Dep't of Soc. & Health Servs., 169 Wn. App 137, 148 n.17, 279 P.3d 500 (2012).

Nelson claims that several items of direct evidence of age discrimination exist in the record. Specifically, he cites (1) a letter written by Puget Sound Pilots (PSP) to the Board, (2) Commissioner Mackey's testimony that the "baby boomers" would retire soon, (3) Commissioner Davis's testimony that a pilot shortage existed, in part, because pilots over 60-years-old were less willing to work on their days off, and (4) Commissioner Addington's concerns of Nelson being stressed.

First, the PSP letter expressed concern over the increased average age because "older pilots tend to be less able to handle the rigors of being overworked and take longer to recover." The letter also states that "older pilots lose more work time to health issues." But neither PSP nor the author of the letter, President Nor, was a decision-maker with respect to Nelson. Licensed pilots formed the PSP, a private association, which "administers the collection of pilotage fees and disbursement to its members." Apparently, some of the Board members also belonged to PSP. But the association does not have regulatory authority to issue licenses. See RCW 88.16.035 (I)(a)-(b) (charging the Board with determining who qualifies for a pilot's license). Because neither PSP nor President Nor engages in any decision-making as to whether a pilot should be licensed, the PSP letter does not constitute direct evidence of age discrimination.

Second, Commissioner Mackey's statement regarding "baby boomer" retirement is not direct evidence of discriminatory animus. Commissioner Mackey made the statement when Nelson's counsel asked, while deposing him, whether he remembered

discussions about the increase in the average age of pilots, as it related to how many new pilots the Board needed. Commissioner Mackey responded "Yes. The baby boomers, us kids, were coming through and we're going to have to get—that's why we had the test. We've got to get new pilots coming into the system, and that was the reason why, because us kids are getting old."

Given this context, Commissioner Mackey's statement does not reflect any animus towards older workers. Instead, he merely explained that the Board needed new pilots because it expected a number of pilots to retire soon. This falls short of evidence of discriminatory motive. See Hatfield v. Columbia Fed. Sav. Bank, 68 Wn. App. 817, 825, 846 P.2d 1380 (1993) (stating that inquiries into retirement is not probative of age discrimination).

Third, Commissioner Davis's testimony does not reflect discriminatory intent. His testimony indicated that in the past, pilots were called in on their days off several times because there were too many jobs for the number of pilots on duty. Commissioner Davis explained that "some of the [older] pilots have said, you know, that they used to be able to do that, but because of their being of somewhat advanced age, that — and by 'advanced' I mean anything over 60 or so, that they really need that two weeks off." Again, this testimony does not demonstrate any animus towards older pilots. Instead, the testimony merely explains why the Board feared a pilot shortage and therefore aimed to license new pilots.

Lastly, Commissioner Addington testified that, because Nelson took a break from training, he may have been feeling stressed. But Nelson does not point to anywhere in the record where Commissioner Addington connected Nelson's perceived stress to his

11

age. Accordingly, Nelson fails to present any direct evidence of age discrimination.

### 2. Circumstantial Evidence

Where a plaintiff produces only circumstantial evidence, Washington applies the McDonnell Douglas[5] evidentiary burden-shifting framework to determine whether discrimination occurred. Mikkelsen, 189 Wn.2d at 527-28. Under this framework, the plaintiff first has the burden to demonstrate a prima facie case of discrimination. Mikkelsen, 189 Wn.2d at 527. If the plaintiff establishes a prima facie case, the defendant then has the burden to give a legitimate, nondiscriminatory reason for its decision. Mikkelsen, 189 Wn.2d at 527. If the defendant does so, the burden shifts back to the plaintiff who must show the defendant's stated reason was pretext. Mikkelsen, 189 Wn.2d at 527.

In Mikkelsen, a wrongful discharge case, the Supreme Court held that to establish a prima facie case of discrimination, a plaintiff must show "(1) [they were] within a statutorily protected class, (2) [they were] discharged by the defendant, (3) [they were] doing satisfactory work, and (4) after [their] discharge, the position remained open and the employer continued to seek applicants with qualifications similar to the plaintiff."[6] 189 Wn.2d at 527.

The defendants argue Nelson did not establish a prima facie case of age discrimination because he cannot demonstrate the third element, i.e., that he was performing satisfactory work.

---

[5] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

[6] Because Nelson's case concerns a failure to license, he would presumably satisfy the second element by showing that the Board did not license him and meet the fourth element by showing the Board continued to license applicants with similar qualifications. Nelson may pursue a WLAD claim against the Board regardless of whether it employed him. See Galbraith v. TAPCO Credit Union, 88 Wn. App. 939, 949-51, 946 P.2d 1242 (1997) (noting that WLAD cases are not limited to the employment context).

The only evidence Nelson highlights to argue that he was qualified for licensing is that two commissioners felt Nelson was qualified in 2007. According to conference call minutes from September 6, 2007, Commissioners Hannigan and Snyder indicated, "Captain Nelson is ready for licensing. Evaluation reports from senior pilots have indicated that Capt. Nelson is ready. Even though Capt. Nelson may not be a *superstar* he is doing what we require of him. In our opinion he meets the requirements to be a licensed pilot." Notably, however, these minutes were recorded after Nelson's first training extension (in which he had three interventions). By the end of his fifth training extension and after the intervention involving Pier 86, none of the commissioners, including Hannigan and Snyder, felt Nelson qualified for licensing.

Throughout his extensions, the TEC found that Nelson performed inconsistently. Specifically, the TEC stated Nelson "had significant and repeated difficulty in mastering . . . shiphandling skills with respect to situational awareness during docking, undocking, and waterway transits; and speed control." Nelson also demonstrated difficulty using tugboats. The inconsistencies in these skills did not improve throughout the training program extensions. At the end of Nelson's fifth extension, the supervising pilot intervened because Nelson almost crashed into the dock at Pier 86. Commissioner Mackey testified in the administrative case that the interventions were a serious factor, and that he considered both the number of interventions and when they took place; interventions towards the end of a trainee's program were especially concerning. The Board extended the training program for every trainee with six or more interventions in the initial period and did not license any trainee with more than eight total interventions.

Nelson had 17 total interventions and interventions continued throughout his

extensions. Other than the statements of Hannigan and Snyder, Nelson points to no evidence that he was performing at a satisfactory level. Nelson does not demonstrate an issue of fact on this point. As such, he fails to establish the third element required for a prima facie case of discrimination. Accordingly, the trial court did not err in granting summary judgment for the defendants.

D. Gender Discrimination, Disability Discrimination, and Retaliation

Though Nelson assigns error to the trial court dismissing his gender and disability discrimination claims and retaliation claim,[7] he does not adequately brief these issues. A party abandons assignments of error that they do not argue in their brief. Greensun Grp., LLC v. City of Bellevue, 7 Wn. App. 2d 754, 780 n.11, 436 P.3d 397 (2019); RAP 10.3(a)(5). Accordingly, Nelson abandoned these issues.[8]

---

[7] Though Nelson fails to sufficiently argue his retaliation claim in his opening brief, he does address it in his reply. Appellate courts generally do not address arguments raised for the first time in a reply brief, even if they are of constitutional magnitude, because the other party does not have a fair opportunity to respond. State v. Peerson, 62 Wn. App. 755, 778, 816 P.2d 43 (1991). Though Nelson technically may have raised the claim in his opening brief because he assigned error to the trial court dismissing his retaliation claim, his failure to sufficiently argue the issue until his reply nevertheless denied the defendant's a fair opportunity to respond to his claim.

But even if Nelson raised the issue, he failed to raise an issue of material fact. WLAD protects a person engaging in statutorily protected activity from retaliation by an employer or "other person." RCW 49.60.210(1). But "[a] general complaint about an employer's unfair conduct does not rise to the level of protected activity in a discrimination action under WLAD absent some reference to the plaintiff's protected status." Alonso, 178 Wn. App. at 754.

Here, Nelson fails to show that either his e-mail or his presentation to the Board referenced his protected status. The e-mail does not mention age discrimination, Nelson's protected status as a person over 40, or any other protected category. See RCW 49.44.090 (providing that it is an unfair practice for "an employer or licensing agency, because an individual is forty years of age or older, to refuse to hire or employ or license or to bar or to terminate from employment such individual"). As to the presentation, Nelson does not claim that he ever alleged age discrimination or referenced his protected status in the presentation. Thus, Nelson did not raise an issue of fact as to his engagement in protected conduct.

[8] Nelson additionally assigned error to the court's order denying his motion for reconsideration, but does not otherwise discuss the motion in his briefing. We deem abandoned, and will not consider, assignments of error that the appellant does not argue or discuss in their brief. Greensun, 7 Wn. App. 2d at 780 n.11. Accordingly, we decline to address this issue.

E. Attorney Fees

Nelson requests attorney fees pursuant to RAP 18.1. The entirety of his request provides, "Pursuant to RAP 18.1, Capt. Nelson hereby requests an award of attorney's fees and costs for this appeal, assuming he prevails at trial" (citing RCW 49.60.030(2)[9]). Because we affirm the trial court's summary judgment order in favor of the defendants, we deny Nelson's request for attorney fees.

Affirmed.

_Chen, C.J._

WE CONCUR:

_Andrus, J._

_Verellen, J._

---

[9] RCW 49.60.030(2) states:
Any person deeming [themselves] injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further violations, or to recover the actual damages sustained by the person, or both, together with the cost of suit including reasonable attorneys' fees or any other appropriate remedy authorized by this chapter or the United States Civil Rights Act of 1964 as amended, or the Federal Fair Housing Amendments Act of 1988 (42 U.S.C. Sec. 3601 et seq.).