**548**

Theresa Eileen STRIETMATTER and Stanley Allan Strietmatter, Plaintiffs,

v.

The PROCTER & GAMBLE COMPANY, an Ohio corporation; the Procter & Gamble Distributing Company, an Ohio corporation; the Procter & Gamble Manufacturing Company, an Ohio corporation; and the Procter & Gamble Paper Products Company, an Ohio corporation, Defendants.

No. 82–632–M Civ.

United States District Court, D. New Mexico.

March 25, 1983.

John Wentworth, Jones, Gallegos, Snead & Wertheim, P.A., Santa Fe, N.M., for plaintiffs.

Jeffrey R. Brannen, Sante Fe, N.M., for defendants.

MEMORANDUM OPINION AND ORDER

MECHEM, Senior District Judge.

This matter comes on for consideration on plaintiffs' motion for partial summary judgment on the issues of negligence and strict liability. The plaintiffs, Theresa and Stanley Strietmatter, have brought this diversity action against various Procter & Gamble companies alleging that Mrs. Strietmatter contracted toxic shock syndrome (TSS) after using Rely Tampons. The plaintiffs assert that Mrs. Strietmatter suffered severe and permanent injuries as a result of using Rely Tampons. Three causes of action have been pled—breach of warranty, negligence and strict liability but only the latter two are at issue in this motion.

The Strietmatters base their motion on the fact that juries found against the Procter & Gamble companies in two prior federal diversity district court cases, *Kehm v. Procter & Gamble,* Civ. No. C80–119 (N.D. Iowa, Judge McManus) and *Lampshire v. Procter & Gamble,* Civ. No. 80–1567 (D.Colo., Judge Finesilver) on the issue of negligence and/or strict liability. The plaintiffs are arguing that the Procter & Gamble companies should now be collaterally estopped from relitigating their liability on these issues. Both lawsuits involved different plaintiffs but *Kehm* was against all four of the defendant companies while *Lampshire* was against three of the four defendant companies. Thus, the Strietmatters are attempting to use the doc-

trine of collateral estoppel offensively. *See Parklane Hosiery v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). For the reasons explained in this opinion, I find that this motion is not well taken and will be denied.

■ First, *Lampshire v. Procter & Gamble* is not a final judgment for the purposes of collateral estoppel. The *Lampshire* jury returned an inconsistent special verdict form, finding for the minor plaintiff on the issues of strict liability and negligence but failing to assess damages. Upon a post-trial motion, Judge Finesilver vacated the judgment and set the case for retrial. The parties subsequently settled the suit with no admissions of liability.

It is axiomatic that before an issue can be precluded, the issue determined in the prior adjudication must be "sufficiently firm to be accorded conclusive effect." *Restatement, Judgment 2d*, § 13. In setting aside the jury's verdict, Judge Finesilver determined "the inconsistency inherent in these verdicts ... 'lie[s] deeper' than an inadequate award of damages." Order entered June 1, 1982, citing *Cheney v. Moler*, 285 F.2d 116 (10th Cir.1960). Since the action of the jury was a nullity, the issues determined in the special verdict form cannot be given conclusive effect.

When determining what collateral estoppel effect *Kehm* should have on the present case, if any, the threshhold issue is whether the federal law of collateral estoppel or the law of the forum, in this case New Mexico, on collateral estoppel should apply. The parties have presented both sides of the argument and it is apparent that a split exists among the circuits. The Second and Fifth Circuits have held that where the prior judgment is a federal judgment, its collateral estoppel effect is governed by federal law even where jurisdiction in the prior federal suit was based on diversity. *Comm. Box & Lumber Co., Inc. v. Uniroyal, Inc.*, 623 F.2d 371 (5th Cir. 1980); *Aerojet-General Corp. v. Askew*, 511 F.2d 710 (5th Cir.1975), app. dism'd. 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975); *Kern v. Hettinger*, 303 F.2d 333 (2d Cir.1962); *See also*, 8 *Fed. Proc.*, L.Ed. § 20:370 (1982).

On the other hand, two circuits, virtually without discussion, have held that the state law of collateral estoppel should apply in this situation. *Schneider v. Lockheed Aircraft Corp.*, 658 F.2d 835, 851, n. 17 (D.C. Cir.1981); *Gatewood v. Fiat*, 617 F.2d 820, 826, n. 11 (D.C.Cir.1980); *Morgan v. Inter-Continental Trading Corp.*, 360 F.2d 853 (7th Cir.1966); *Lindsay v. Cutter Lab., Inc.*, 536 F.Supp. 799 (W.D.Wis.1982); *See also* 19 *A.L.R.Fed.* 709, Law Governing *Res Judicata*. Two other circuits have found that since there was no difference between the applicable state law of collateral estoppel and the federal law, they need not decide the issue. *See, Garrigan v. Giese*, 553 F.2d 35, 36–7, n. 2 (8th Cir.1977); *Lynne Carol Fashions, Inc. v. Cranston Print Works Company*, 453 F.2d 1177, 1179–81 (3rd Cir.1972).

The Tenth Circuit has not addressed the issue. *Coppedge v. Clinton*, 72 F.2d 531 (10th Cir.1934), the only Tenth Circuit case remotely on point, considered the effect of a prior *state* court judgment in a subsequent federal diversity case. The parties have strenuously argued this point since the New Mexico law of collateral estoppel and the federal law differ. New Mexico still requires mutuality of parties before collateral estoppel can be applied. *State v. Rogers*, 90 N.M. 604, 607, 566 P.2d 1142, 1145 (1977). Since the plaintiffs in *Kehm* and in the present case cannot claim mutuality, application of New Mexico law would absolutely preclude the offensive use of collateral estoppel.

■ After analyzing the cases, I have concluded the better reasoned approach is that adopted by the Fifth and Second Circuits. The application of collateral estoppel is primarily a procedural problem. Therefore, most courts have reasoned that to enable them to function effectively as a cohesive system, "the force and effect of a judgment rendered in a federal district court upon an action pending in other federal district courts should properly be determined under federal law." *In re Air Crash Disaster*, 350 F.Supp. 757, 764 (S.D. Ohio 1972), rev. *sub nom.* on other

grounds, *Humphreys v. Tann*, 487 F.2d 666 (6th Cir.1973).

 Having decided that the federal law of collateral estoppel should apply, I must then analyze whether the Procter & Gamble companies should be estopped from re-litigating the issue of strict liability under the guidelines of *Parklane Hosiery v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). I find that it would be unfair to the Procter & Gamble defendants to apply collateral estoppel to them based on the general verdict reached in *Kehm*. Of the hundreds of similar actions filed by plaintiffs who allegedly suffered TSS against the Procter & Gamble companies, the four judges who have considered whether to apply collateral estoppel on the basis of *Kehm* have denied the plaintiffs' motions for summary judgment. *Fisher v. Procter & Gamble*, No. 80–1104–C (W.D. N.Y., order entered February 8, 1983); *Baldinger v. Procter & Gamble*, No. 80–5066–CA(L) (15th Jud.Cir., Fla., order issued Jan. 24, 1983); *Wolf v. Procter & Gamble*, No. 82–130–8 (D.N.J., order entered Sept. 15, 1982); *Malmstrom v. Procter & Gamble*, No. C–81–0461–C, (D.Utah, order entered Sept. 3, 1982). The four judges have cited various reasons, all of which I find convincing.

It is unclear, for example, whether the jury in *Kehm* in its general verdict found for the plaintiff on the theory of defect in design or on the theory of failure to warn. The difference is important in the present case because Mrs. Kehm contracted TSS in September 1980 during the time an association between Rely Tampons and TSS was becoming apparent. Thus, the jury may have found a failure to warn on the part of Procter & Gamble. On the other hand, Mrs. Strietmatter allegedly contracted TSS in January 1980, several months before an association had even made between menstruating women and TSS.

In the *Kehm* case, the plaintiff presented evidence of the defendants' voluntary withdrawal of Rely Tampons. The trial court decided not to give a limiting instruction pursuant to Fed.R.Evid. 407 because the Eighth Circuit had construed Rule 407 to exclude strict liability cases. Judge Finesilver, however, sitting in this circuit gave a Rule 407 limiting instruction when presented with the same evidentiary situation. While I do not know how I will rule when presented with this situation, it may be that the trial in the present action will afford the Procter & Gamble companies a procedural opportunity which was not available to them in *Kehm* and which may cause a different result. *Parklane Hosiery v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 651–52, 58 L.Ed.2d 552 (1979).

Finally, the defendants have persuaded me that it would be unfair to bind them to the jury's verdict in *Kehm* in light of the uncertainty in the scientific community about TSS and its causes. Apparently new reports have been released since the *Kehm* trial. While it is impossible for me to conclude whether those reports will be favorable to the plaintiffs or the defendants, I cannot find that the Procter & Gamble companies should be estopped from relitigating the issue of strict liability when much of the scientific evidence is not yet in. Now, Therefore,

IT IS ORDERED that the plaintiffs' motion for partial summary judgment on the issues of negligence and strict liability shall be, and hereby is, denied.