Karen M. RYE, Administratrix and Personal Representative of the Beneficiaries and Estates of Vallabhbhai N. Tandel, Vali M. Dosani, Niyaz S.A. Shaikh, and Vinod P. Menon, Plaintiffs,

v.

UNITED STATES STEEL MINING, CO., INC., Defendant.

Civ. A. Nos. 2:93CV334 to 2:93CV337.

United States District Court,
E.D. Virginia,
Norfolk Division.

Jan. 21, 1994.

Jeffrey Arnold Breit, Billie Jeanne Hobbs, Breit, Drescher & Breit, Norfolk, VA, for Karen M. Rye, et al.

Morton Hutchinson Clark, Carter T. Gunn, Vandeventer, Black, Meredith & Martin, Norfolk, VA, William R. Hawkins, John F. Wilson, USX Corp., U.S. Steel Group, Law Dept., Pittsburgh, PA, for U.S. Steel Mining Co., Inc.

Denham Arthur Kelsey, Andrew Jackson Timms, Hunton & Williams, Norfolk, VA, for Bergesen D.Y. A/S.

## OPINION AND ORDER

Morgan, District Judge.

## BACKGROUND

This Court previously heard the case of *Boykin v. Bergesen*, 835 F.Supp. 274

(E.D.Va.1993) (*"Boykin"*), in which the representative of decedent Captain Denzil J. Pereira brought an action under the Death on the High Seas Act, 46 U.S.C.Appx. §§ 761–768 ("DOHSA"), as a result of Pereira's death during an explosion aboard the M/V BERGE CHARLOTTE. At the conclusion of the trial of that action, the Court found that the defendant shipper, U.S. Steel, Inc. ("U.S. Steel"), was negligent and had proximately caused the explosion which resulted in the death of Pereira. The Court also found that, based on the evidence which had been submitted to the Court, there was insufficient evidence upon which the Court could base a finding of comparative negligence of the master or crew of the BERGE CHARLOTTE or Bergesen, D.Y. A/S ("Bergesen"), its owner. *See Boykin*, Opinion and Order of October 4, 1993.

On April 15, 1993, four actions related to *Boykin* were filed. Karen M. Rye ("Rye") is the administratrix for Messrs. Vallabhbhai N. Tandel, Vali M. Dosani, Niyaz S.A. Shaikh, and Vinod P. Menon, each of whom were crewmembers also killed in the explosion aboard the M/V BERGE CHARLOTTE. Unlike the *Boykin* case, however, in these actions the plaintiff has invoked the court's diversity jurisdiction as opposed to its admiralty jurisdiction. 28 U.S.C. § 1332. In addition, instead of claiming damages under DOHSA alone, plaintiff also seeks recovery under the wrongful death provisions of general maritime law. *See, e.g., Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970).

The parties came before the Court upon: 1) Rye's motion for summary judgment based on principles of offensive collateral estoppel; 2) U.S. Steel's motion for summary judgment on the issue of pain and suffering of the decedents experienced prior to death; and 3) Bergesen's motion for summary judgment based on principles of res judicata and/or collateral estoppel.[1]

## 1. Rye's Motion for Summary Judgment Based on Offensive Collateral Estoppel

Rye has sought summary judgment on the issue of U.S. Steel's liability for the death of

---

1. Bergesen was brought into this action by a third party complaint filed by U.S. Steel. Bergesen was not sued as a defendant by Rye in this action.

the decedents. Rye contends that the liability of U.S. Steel was clearly established in the case of *Boykin,* Opinion and Order of October 4, 1993, and that principles of offensive collateral estoppel should apply to preclude U.S. Steel from relitigating its liability.

It appears that the Court has considerable discretion in deciding whether to grant summary judgment on the basis of offensive collateral estoppel. Generally, collateral estoppel applies where the second action between the same parties is upon a different cause or demand. The judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but only as to those matters in issue or points actually controverted, and upon the determination of which the finding or verdict was rendered. *Cromwell v. County of Sac,* 94 U.S. 351, 353, 24 L.Ed. 195 (1877).

Because this is an action under federal maritime law, the parties agree that federal principles of collateral estoppel should apply. *Stoddard v. Ling–Temco–Vought, Inc.,* 513 F.Supp. 335, 336 (C.D.Cal.1981). Under the federal law of offensive collateral estoppel, a defendant may be precluded from relitigating an issue when four factors are met. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). A plaintiff may be entitled to use offensive collateral estoppel when: (1) the plaintiff could not have easily joined in the earlier action; (2) there was no unfairness to the defendant because the defendant had every incentive to litigate the earlier action fully and vigorously; (3) the judgment in the earlier action was not inconsistent with any previous decision; and (4) there were no procedural opportunities available to the defendant in the second action that were not available in the first action that would likely cause a different result. *Id.* at 329–33, 99 S.Ct. at 650–53.

The Fourth Circuit has stated that federal district courts have broad discretion in applying these rules to determine when the doctrine of offensive collateral estoppel should be applied. *Dracos v. Hellenic Lines,*

*Ltd.,* 705 F.2d 1392, 1397 (4th Cir.1983). The Fourth Circuit has more recently set forth the standard for issue preclusion in *Sandberg v. Virginia Bankshares, Inc.,* 979 F.2d 332 (4th Cir.1992). The Court stated that the doctrine of issue preclusion forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom issue preclusion is asserted had a full and fair opportunity to litigate, citing *Virginia Hosp. Ass'n. v. Baliles,* 830 F.2d 1308, 1311 (4th Cir.1987).[2] Generally, only a final valid judgment will be given preclusive effect, although finality in some contexts is modified into a rule of practical finality.

Courts generally apply issue preclusion only when no unfairness results. *Swentek v. USAir, Inc.,* 830 F.2d 552, 561 (4th Cir.1987). Among the factors considered in evaluating fairness are whether the party had incentives to litigate fully an issue in the first instance and whether the role of the issue in the second action was foreseeable in the first action. *Parklane Hosiery,* 439 U.S. at 332, 99 S.Ct. at 652.

Issue preclusion is normally committed to the broad discretion of the district courts. *Id.* at 331, 99 S.Ct. at 651. However, the Fourth Circuit held in *Sandberg* that many of the requirements for issue preclusion were mixed questions of law and fact that should be reviewed on appeal *de novo.* The Court held that the following requirements should be reviewed *de novo* on appeal: 1) whether an issue is identical to the one previously litigated; 2) whether the issue was actually determined; 3) whether it was necessarily decided; and 4) whether the judgment was final and valid. *Sandberg,* 979 F.2d at 344. The Court stated that the question of whether a party had a full and fair opportunity to litigate an issue related to the fairness of issue preclusion, and should be reviewed under an abuse of discretion standard; the Court focused primarily upon whether a party had the opportunity to litigate the disputed issue. *Id.*

---

**2.** Prior litigation may even include previous stages of the same litigation, such as when a jury verdict has a binding effect upon a judge's subsequent equitable rulings.

■ With regard to the finality requirement, noted above, the *Sandberg* Court stated that, for purposes of issue preclusion, a final judgment includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect, citing the Restatement (Second) of Judgments, § 13. *Id.* at 347. Finality is a flexible concept, which may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again. *Id.*

■ Of particular concern to the *Boykin* and *Rye* cases, the *Sandberg* Court addressed the fairness requirement in the context of the ability of the parties to present all of their evidence at trial. The Court stated that the primary focus of the fairness requirement is on whether the parties had a full and fair opportunity to litigate. *Id.* In *Sandberg*, the party against whom preclusion was sought contended they did not have a full opportunity to litigate an issue because they were unable to present all of their evidence at the first trial. Concerning the issue of whether the directors of a company acted *knowingly*, the defendants protested that if they had known knowledge would be at issue, *each* director would have been entitled to testify about his knowledge, but the district court did not permit all the directors to testify because it concluded the evidence was cumulative.

On appeal, the *Sandberg* Court stated that because the directors did not say what this additional testimony would have been, the Court had no basis for concluding that issue preclusion was unfair. *Id.* Moreover, the Court did not believe that the presentation of further evidence would have given the directors a fuller or fairer opportunity to litigate under the factual circumstances of that case.

For her part, Rye asserts that the four factors for applying collateral estoppel are met here and that offensive collateral estop-

pel is appropriate. She contends that she earlier attempted to consolidate each of the actions but her attempt was denied by the Court. Therefore, she was unable to join in the prior action. Further, Rye contends that both the issue of U.S. Steel's negligence and the lack of any negligence attributable to Bergesen or the crew was fully and fairly litigated.

A possible obstacle to Rye, which is closely related to whether the issue was fully and fairly litigated, is the question of whether any procedural opportunities were absent U.S. Steel in the first action. U.S. Steel contends that it was prevented from introducing evidence of Bergesen or the crew's negligence by evidentiary rulings which prevented it from using the testimony of several expert witnesses.[3]

In addition, U.S. Steel was unable to locate the second officer of the BERGE CHARLOTTE to obtain his testimony at trial. Based on the evidence at trial, and based on interviews of the second officer conducted prior to trial, it appeared that the second officer may have been the surviving crewmember with the best opportunity to view what if any activities the crew of the BERGE CHARLOTTE were engaged in when the fatal explosion took place. The second officer disappeared prior to trial and therefore U.S. Steel was unable to obtain his testimony during the trial of the *Boykin* action.

■ Rye cites the Restatement (Second) of Judgments § 29, comment (j) as a basis for finding that neither of these considerations should preclude collateral estoppel. Comment (j) to the Restatement of Judgments, concerning other circumstances which should prevent issue preclusion, states:

Other circumstances. The circumstances specified in this Section are illustrative rather than definitive of those that may be considered in determining application of issue preclusion. Important among such other circumstances is the disclosure that the prior determination was plainly wrong

---

**3.** U.S. Steel was precluded from introducing such evidence because of the ruling of United States Magistrate Judge Tommy E. Miller, on May 26, 1993, in which the Magistrate held that U.S. Steel had not properly identified several witnesses as experts in response to interrogatories as provided in Fed.R.Civ.P. 26. *See* Transcript of Motion to Exclude Testimony, May 26, 1993, at 36–37.

or that new evidence has become available that could likely lead to a different result. *It is unnecessary that the party seeking to avoid preclusion show, as he must in seeking to set aside a judgment, that the evidence could not have been discovered with due diligence; the question is not whether a prior determination should be set aside but whether it should be treated as conclusive for further purposes* (emphasis added).

Surprisingly, Rye then cites this comment in support for her contention that issue preclusion should apply because U.S. Steel was not diligent in locating the second officer and in providing notice of the expert witnesses it would use at trial. However, the comment clearly indicates that the party seeking to avoid issue preclusion does *not* have to show that the new evidence could not have been discovered had it exercised due diligence. Even if the Court found that U.S. Steel did not act diligently, which it has not so found, the Court believes that it still has the discretion to deny issue preclusion. *See Parklane Hosiery*, 439 U.S. at 332, 99 S.Ct. at 652 (district courts have broad discretion in determining when to apply offensive collateral estoppel).

Rye also notes that even if the second officer were to appear and testify in some way as to the crew's negligence, such testimony would be subject to impeachment based upon prior interviews of the second officer in which he allegedly stated he knew of no such activities. No such problem is apparent with regard to the expert witnesses who were previously precluded from testifying; although they were technically unavailable during the first action because of the magistrate's ruling, there is no contention that the experts will be unavailable to testify in the *Rye* actions.

The previous trial was notable for the lack of evidence as to the ignition source for the explosion, and the Court believes that any available evidence upon this issue would be helpful in determining the truth. The fact that U.S. Steel was unable to utilize the testimony of the expert witnesses and the second officer may have been critical to the ultimate resolution of the *Boykin* case.

After considering all factors, the Court declines to fully apply principles of offensive collateral estoppel in this case. The Court DENIES in part Rye's motion for summary judgment to the extent that Rye seeks to preclude litigation of the negligence of parties other than U.S. Steel or China Steel,[4] such as the crew of the ship or Bergesen. Because the defendants were unable to or precluded from introducing evidence which may have affected the Court's ruling on the negligence of Bergesen or the crew, and because that issue was vital to the resolution of the *Boykin* case, the Court does not believe it would be appropriate to preclude this issue from being litigated in the other four *Rye* actions.

The Court is troubled by the apparent disappearance of the second officer, the one crewmember surviving who may have had the best view of what if any activities were being conducted by the crew at the time of the explosion. This concern is amplified by the Court's observance during the *Boykin* action, noted in the Court's Opinion and Order of October 4, 1993, n. 13, that there was a paucity of evidence on the part of the crew as to what activities they were engaged in at the time of the explosion. The Court believes that U.S. Steel should be given an opportunity, even if it eventually proves fruitless, to locate and obtain the testimony of this person. Further, the Court does not believe that the time limitation and discovery rulings which precluded the use of expert testimony in the *Boykin* matter should carry over to preclude the admission of such evidence in *Rye*, since the plaintiffs now have ample notice and the opportunity to rebut such evidence.

The Court does, however, GRANT Rye's motion in part to the extent Rye seeks to preclude U.S. Steel from relitigating its own negligence. The Court holds that U.S. Steel's negligence has been determined as a

---

4. China Steel was a co-defendant with U.S. Steel in the *Boykin* action. During that action, U.S. Steel agreed to bear the legal responsibility for any negligence attributed to China Steel as a result of this incident.

matter of law for the purposes of the *Rye* actions.

## 2. U.S. Steel's Motion for Summary Judgment Based on Collateral Estoppel

U.S. Steel has sought partial summary judgment on the issue of whether Rye may recover for the pain and suffering of the decedents prior to their demise. U.S. Steel contends that there was no evidence introduced in *Boykin* which would show that any of the decedents survived the explosion aboard the BERGE CHARLOTTE.

However, the *Boykin* action was tried under DOHSA, for which no award for pain and suffering prior to death can be made. *See* Thomas J. Schoenbaum, ADMIRALTY AND MARITIME LAW, § 7–2 (1987). In these actions, Rye asserts a cause of action under both DOHSA and the general maritime law for wrongful death. Under the general maritime law, a plaintiff can recover for pain and suffering prior to death. *Id.; Azzopardi v. Ocean Drilling and Exploration Co.*, 742 F.2d 890, 893 (5th Cir.1984). Further, none of the four plaintiffs represented by administratrix Rye were parties to the prior action, and therefore evidence of their pain and suffering prior to death would have been irrelevant. Therefore, the Court does not believe this issue was fully and fairly litigated in the prior action.

Accordingly, the Court DENIES U.S. Steel's motion for summary judgment on the issue of the decedents' pain and suffering experienced prior to death. The Court's ruling is without prejudice to any other appropriate motions of the defendants concerning this issue, *i.e.*, the Court's motion is not intended to indicate that Rye has submitted factual proof that the decedents suffered prior to their death. The Court's ruling merely indicates that principles of collateral estoppel do not bar Rye from attempting to produce such evidence.

## 3. Bergesen's Motion for Summary Judgment Against U.S. Steel Based on Res Judicata and/or Collateral Estoppel

In the *Rye* actions, U.S. Steel has brought in Bergesen as a third-party defendant, claiming either contribution or indemnity for any liability it owes the *Rye* plaintiffs. Bergesen has filed a motion for summary judgment asserting that the Court's decision in *Boykin* precludes U.S. Steel's third party action against it in the *Rye* cases under principles of res judicata and/or collateral estoppel.

Bergesen contends that in *Boykin*, U.S. Steel filed identical claims for tort indemnity and contribution, but at two different stages the claims were extinguished. The first stage—two pretrial summary judgment motions—eliminated the *legal* basis for both claims, because the Court ruled that Bergesen could not be liable for indemnity and contribution as a matter of law. According to Bergesen, the second stage—the trial itself—eliminated the *factual* basis for U.S. Steel's claims, because the Court made factual findings which found U.S. Steel one hundred percent liable for the explosion.

The test for application of res judicata on Bergesen's behalf differs from the test for collateral estoppel sought to be used by the *Rye* plaintiffs, discussed *supra*. Under res judicata, a final judgment "... precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981). It applies to bar not only issues that were actually raised and litigated, as with collateral estoppel, but also issues that could have been raised in the earlier action. *United States v. Tatum*, 943 F.2d 370, 381 (4th Cir.1991). Further, absent fraud or some other factor invalidating the judgment, the action cannot be brought again into litigation between the parties upon any ground whatsoever; a former judgment will be binding even though erroneous. *Thomas v. Consolidation Coal Co.*, 380 F.2d 69, 80 (4th Cir.), *cert. denied*, 389 U.S. 1004, 88 S.Ct. 562, 19 L.Ed.2d 599 (1967).

Bergesen contends that the Fourth Circuit applies a transactional approach to determine whether the second case is sufficiently similar to the first case, citing *Meekins v. United Transp. Union*, 946 F.2d 1054, 1058 (4th Cir.1991); *Keith v. Aldridge*, 900 F.2d 736, 740 (4th Cir.), *cert. denied*, 498 U.S. 900, 111 S.Ct. 257, 112 L.Ed.2d 215 (1990). Under

this approach, the appropriate inquiry is "... whether the new claim arises out of the same transaction or series of transactions as the claim resolved by the prior judgment." *Harnett v. Billman,* 800 F.2d 1308, 1313 (4th Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1571, 94 L.Ed.2d 763 (1987).

■ Unlike collateral estoppel, in which courts appear to have considerable discretion in deciding when not to apply the doctrine, the doctrine of res judicata is intended to protect the rights of parties and is an area in which the Court has less discretion in deciding whether or not to apply the doctrine. As stated by the United States Supreme Court, res judicata is:

> ... not a mere matter of practice or procedure inherited from a more technical time but a rule of fundamental and substantial justice, of "public policy and of private peace," which should be enforced by the courts to the end that rights once established by the final judgment of a court of competent jurisdiction shall be recognized by those who are bound by it in every way, wherever the judgment is entitled to respect (citation omitted).
>
> *Hart Steel Co. v. Railroad Supply Co.,* 244 U.S. 294, 299, 37 S.Ct. 506, 508, 61 L.Ed. 1148 (1917).

The Court FINDS that Bergesen is entitled to summary judgment. At oral argument, U.S. Steel conceded that, in light of the Court's rulings in *Boykin,* it had no legal basis for asserting a claim for contribution or indemnity against Bergesen and that its sole purpose in so doing was to ensure that it could introduce evidence of Bergesen or the crew's negligence in the trial of the *Rye* actions. U.S. Steel concedes that principles of res judicata apply to bar the claim for contribution or indemnity. Accordingly, the Court GRANTS Bergesen's motion for summary judgment and ORDERS that U.S. Steel's claims for contribution and indemnity against Bergesen be DISMISSED.

The clerk is REQUESTED to mail a copy of this Order to counsel of record.

It is so ORDERED.