2015 FEB 17 AM 9: 23



# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

STATE FARM FIRE & CASUALTY ) No. 71302-7-I
COMPANY, as subrogee for CAROLE )
HAUSKINS; and CAROLE )
COE-HAUSKINS, a single woman, )
) DIVISION ONE
    Respondents, )
)
  v. )
)
FORD MOTOR COMPANY, a foreign )
corporation, and PRICE FORD, INC., )
a foreign corporation, ) UNPUBLISHED OPINION
)
    Appellants, )
)
_____ ) FILED: February 17, 2015

SPEARMAN, C.J. — In this product liability action brought by Carole Coe-Hauskins and State Farm Fire & Casualty Company against Ford Motor Company, the trial court entered partial summary judgment against Ford on the issue of design defect based on collateral estoppel. We reverse and remand for trial.

## FACTS

On July 11, 2010, Carol Coe-Hauskins' (Coe-Hauskins) 1994 Lincoln Town Car was parked outside her home when a fire occurred in the engine block of the vehicle. The fire spread to Coe-Hauskins' home, causing property damage as well as other expenses, a portion of which were paid by Coe-Hauskins'

insurer, State Farm Fire & Casualty Company (State Farm). A few months later, Coe-Hauskins and State Farm (collectively, "Hauskins") initiated this action to recover the damages incurred in the fire.

Hauskins alleged that the fire was caused by a defective speed control deactivation switch (SCDS) in the 1994 Lincoln Town Car's speed control system. The SCDS is a pressure-activated electrical switch designed and manufactured by Texas Instruments. Beginning in 1992, Ford used the device in several of its vehicles, including the 1994 Lincoln Town Car, as a redundant means of deactivating speed control. The device has a "wet" side and a "dry" side that are separated by seals. Clerk's Papers (CP) at 668-669. It functions by allowing brake fluid to flow into the wet side when the brakes are applied; the resulting fluid pressure opens the SCDS's electrical contacts and disconnects the speed control function. If the seals are compromised, brake fluid can enter the dry side of the SCDS and create a conductive path from the electrical contacts to ground. When the SCDS is powered, this conductive path allows the contacts to corrode and the corrosion byproducts increase the electrical conductivity of the fluid. This process generates heat that, over time, can lead to fire.

In 2004, the National Highway Traffic Safety Administration's (NHTSA) Office of Defects Investigation, with participation by Ford and Texas Instruments, opened an investigation to assess suspected SCDS failures and related engine compartment fires in certain Ford model year vehicles. NHTSA wanted to "understand why certain Ford model/model [sic] year vehicles had very high rates of key off engine compartment fire, while other models using the same part

number SCDS had very low rates of fire." CP at 667. The results of this investigation were published in NHTSA's August 2006 "Engineering Analysis Closing Report." In this report, NHTSA concluded that a specific combination of vehicle characteristics materially impacted the process that can lead to a fire at an SCDS. These factors include: (1) high vacuum pressure due to placement of the SCDS on the master cylinder; (2) SCDS orientation in the "vertical up" position (as opposed to angled); and (3) continuous power to the SCDS. NHTSA found the factors to be present in several, but not all, Ford and Lincoln vehicles equipped with the Texas Instruments SCDS.

Notably, the 1994 Lincoln Town Car did not exhibit the first or second factor NHTSA associated with heightened risk of fire. In that model vehicle, the SCDS was mounted on a proportioning valve, not on the brake master cylinder and, as a result, it did not experience high vacuum pressure. Additionally, the SCDS in the 1994 Lincoln Town Car was mounted at a 45 degree angle, rather than in the "vertical up" position associated with heightened risk of fire.

In response to the NHTSA investigation, Ford announced a voluntary recall of certain Ford and Lincoln vehicles in January 2005. In August 2007, Ford increased the scope of the recall to include additional vehicles, including the 1994 Lincoln Town Car, based on concerns over possible long term durability issues with the SCDS. The vehicles subject to the 2007 supplemental recall did not have the combination of factors NHTSA identified as creating a high risk of an SCDS fire.

3

When Ms. Coe-Hauskins learned of the recall, she brought her 1994 Lincoln Town Car to a Ford dealership for repair. The repair, which was completed 17 months before the fire, modified the design of the speed control system by installing a 2-amp fused jumper harness on the circuit powering the SCDS. This modification was designed so that, should brake fluid leak into the electrical cavity of the SCDS (the "dry" side), the 2-amp fuse would blow, interrupting the process of corrosion that could otherwise lead to fire at the SCDS.

## Procedural History

Hauskins sued Ford, alleging that a design defect in the SCDS with 2-amp fused jumper harness repair[1] caused Hauskins' damages. Hauskins asserted that Ford was strictly liable, under the Washington Tort Reform and Product Liability Act (WPLA), chapter 7.72 RCW, for damages caused by its defective product. Hauskins also claimed that Ford was liable under an ordinary negligence theory for failing to warn of the dangers associated with its product.

Hauskins moved the trial court for partial summary judgment on the issue of design defect, an essential element of the WPLA claim.[2] Hauskins argued that Ford was collaterally estopped from re-litigating whether its product was

---

[1] At oral argument, Hauskins asserted that the only product at issue in this case is the 2-amp fused jumper harness. But Hauskins' motion for summary judgment plainly identifies "the subject Ford Product (**switch and repair**)." CP at 23 (emphasis added). Likewise, the trial court's order granting partial summary judgment found collateral estoppel applied regarding whether "the SCDS and the 2-amp jumper fuse repair in the Hauskins vehicle" were defective. CP at 795. Thus, insofar as our analysis depends on the identity of the product at issue here, we consider the SCDS with 2-amp fused jumper harness, as installed in the Hauskins vehicle.

[2] See, RCW 7.72.030, Liability of manufacturer; Soproni v. Polygon Apartment Partners, 137 Wn. 2d 319, 326, 971 P.2d 500 (1999) (citing Falk v. Keene Corp., 113 Wn.2d 645, 653, 782 P.2d 974 (1989)).

defective based on prior verdicts in <u>Duncan v. Ford Motor Company, et. al.</u>, 2005-CP-30831 (SC District Court 2005) and <u>Rausch v. Ford Motor Company</u>, 73-CV-10-743 (Stearns County District Court, Minn 2010). CP at 22-39. The trial court granted the motion, finding that Hauskins had established each element of collateral estoppel and that application of the doctrine would not work an injustice against Ford. The court held: "[c]ollateral estoppel applie[s] and the SCDS and the 2-amp jumper fuse repair in the Hauskins vehicle are held, as a matter of law, to be defective in design. The only issues remaining for trial [on the WPLA claim] are whether the fire was proximately caused by the Ford vehicle and the amount of damages proximately caused by the fire." CP at 794-95.

A trial on causation and damages began on December 2, 2013.[3] At trial, Ford offered evidence of in-house testing in support of the effectiveness of the recall repair in remedying any flaw in the SCDS. Hauskins moved to exclude the evidence, arguing it was irrelevant in light of the summary judgment decision. The trial court agreed and the jury never considered this evidence. The jury deadlocked on causation and the court declared a mistrial.

Ford appeals the order granting partial summary judgment.

## DISCUSSION

In this appeal we consider whether the trial court's application of collateral estoppel and resulting order granting partial summary judgment were proper. Because the issues on appeal arise from summary judgment proceedings, our

---

[3] The partial summary judgment motion in this case did not affect Hauskins' negligence claim, though it is unclear from the record whether or how that claim proceeded.

inquiry is the same as the trial court's, with questions of law reviewed de novo, the facts and all reasonable inferences from the facts viewed in the light most favorable to the nonmoving party. Christensen v. Grant County Hosp. Dist. No. 1, 152 Wn.2d 299, 305, 96 P.3d 957 (2004). Summary judgment is proper only in the absence of a genuine issue of material fact. Id.; CR 56(c).

Collateral estoppel "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); Williams v. Leone & Keeble, Inc., 171 Wn.2d 726, 731, 254 P.3d 818 (2011). Although the doctrine is usually characterized as an affirmative defense, it is equally available to the plaintiff and may be applied "offensively" to bar the defendant from relitigating issues in a second proceeding.[4] See, e.g., Hadley v. Maxwell, 144 Wn.2d 306, 308-09, 27 P.3d 600 (2001); American Linen Supply Co. v. Nursing Home Bldg. Corp., 15 Wn. App. 757, 551 P.2d 1038 (1976).

The party seeking collateral estoppel must establish four elements: (1) the issue sought to be precluded is identical to that involved in the prior action; (2) the issue was determined by a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to

---

[4] We reject Ford's argument "that it is far from clear, however, that *offensive* non-mutual collateral estoppel is permitted in Washington...." Brief of Appellant at 18. "Washington courts have since retreated from that traditional rule in the context of civil cases and now apply non-mutual collateral estoppel so long as the party against whom preclusion is sought was a party or in privity with a party to the prior litigation and had a full and fair opportunity to litigate the issue in question." E.g., State v. Mullin-Coston, 152 Wn.2d 107, 113-14, 95 P.3d 321 (2004); see also, Hadley, 144 Wn.2d at 306.

the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied. Hadley, at 311-12. The failure to establish any one element is fatal to the proponent's claim. LeMond v. Dep't of Licensing, 143 Wn. App. 797, 805, 180 P.3d 829 (2008). The first and fourth elements are at issue in this case.

Identity of Issues

The central inquiry with respect to Hauskins' WPLA claim was whether a particular modified product, the SCDS with 2-amp fused jumper harness, installed in the 1994 Lincoln Town Car in this case, was defective. This issue raises questions of fact as to both the product design and the configuration of the product in the vehicle. In order to establish identity of factual issues for purposes of collateral estoppel, Hauskins bore the burden of showing substantial similarity between the facts in this case and the prior cases with respect to both inquiries. Hauskins also bore the burden of establishing that the controlling legal rules are the same in this case and the prior cases. See, Thompson v. Dep't of Licensing, 138 Wn.2d 783, 791-92, 982 P.2d 601 (1999); LeMond, 143 Wn. App. at 805-06; Cloud v. Summers, 98 Wn. App. 724, 730-31, 991 P.2d 1169 (1999). Hauskins failed to make either showing.

There is no dispute that the vehicle at issue in Duncan contained an SCDS that was identical to that in 1994 Lincoln Town Car here, but the recall fix– the 2-amp fused jumper harness–was not installed on the vehicle in that case. Thus, the case involved a materially different product than the one presently at issue. Hauskins concedes that the Duncan verdict alone cannot serve as a basis

7

for the trial court's collateral estoppel determination because the <u>Duncan</u> court did not render a verdict finding the fused jumper harness defective.

In <u>Rausch</u>, the jury considered a combined SCDS and 2-amp fused jumper harness assembly identical in design to the one at issue here. However, the configuration of the product in the Rausch and Hauskins vehicles is materially different. In <u>Rausch</u>, unlike in this case, each of the three factors identified by NHTSA as contributing to an increased risk of fire was present in that the part was installed on the master cylinder, in the "vertical up" position, with a continuous power source. Given this material difference between the two cases, at minimum, there is a question of fact as to whether the issues in both cases are identical.

With respect to identity of legal standards, Hauskins contends that the applicable legal standards in this and the prior cases need only be substantially similar, rather than identical. But even if this argument has merit, it is of no consequence here because the legal standards applied in <u>Duncan</u> and <u>Rausch</u> are not substantially similar to the one that governs Hauskins' WPLA strict liability claim.

In both <u>Duncan</u> and <u>Rausch</u>, the jury was instructed based on an ordinary negligence standard. Accordingly, in each case, the jury's inquiry turned on whether Ford had failed to exercise due care in some respect. In contrast, the WPLA strict liability claim here turns on the safety performance of the product as designed, the safety performance of the product had the manufacturer utilized an alternative design, the safety expectations of the consumer, and any detriment to

the product by virtue of incorporation of an alternative design. Falk, 113 Wn.2d at 654. The manufacturer's culpability, i.e., the breach of a duty of care, is not in issue. Id. The ordinary negligence standard followed in Duncan and Rausch is dissimilar to the governing law of this case and, as our Supreme Court held in Falk, application of the ordinary negligence standard under these circumstances is prejudicial error. Id. at 655.

The plaintiff in Duncan also advanced a breach of warranty claim and the jury was instructed accordingly. Although the WPLA contemplates product liability claims based on breach of express or implied warranty (see, Touchet Valley Grain Growers, Inc. v. Opp & Seibold General Const., Inc., 119 Wn.2d 334, 343, 831 P.2d 724 (1992)), in this case Hauskins does not claim that Ford is liable for any such breach. Thus, the law governing the alleged breach of warranty in Duncan is inapposite.

Given the lack of identity between the factual issues and legal standards at issue in this case and the prior cases, the trial court's entry of partial summary judgment against Ford based on collateral estoppel was error.

### Injustice to the Defendant

In determining whether application of collateral estoppel will work an injustice, "'Washington courts focus on whether the parties to the earlier proceeding had a full and fair hearing on the issue.'" Hadley, 144 Wn. 2d at 311 (quoting Neff v. Allstate Ins. Co., 70 Wn. App. 796, 801, 855 P.2d 1223 (1993)). In addition, with regard to the issue of fairness in the context of the offensive use of collateral estoppel, the United States Supreme Court has identified four

specific non-exclusive factors courts should consider. Parklane Hosiery, 439 U.S. at 330-32. These include whether:

1. The plaintiff had the incentive to adopt a 'wait and see' attitude in the hope that the first action by another plaintiff would result in a favorable judgment which might then be used against the losing defendant;

2. The defendant had the incentive to defend the first suit with full vigor, especially when future suits are not foreseeable;

3. One or more judgments entered before the one invoked as preclusive are inconsistent with the latter or each other, suggesting that reliance on a single adverse judgment would be unfair; and,

4. The defendant might be afforded procedural opportunities in the later action that were unavailable in the first "and that could readily cause a different result.

Id.; see also, Syverson v. International Business Machines Corp., 472 F.3d 1072, 1079 (9th Cir. 2007).

Ford contends that giving preclusive effect to the Rausch case was fundamentally unfair under the fourth Parklane Hosiery factor. We agree. A number of courts have concluded that the opportunity to introduce evidence not before the fact finder in the prior action is a new procedural opportunity that precludes application of collateral estoppel. See e.g, Rye v. United States Steel Mining Co., 856 F. Supp. 274, 279 (E.D. Va. 1994) ("Because the defendants were unable to or precluded from introducing evidence which may have affected the Court's ruling [in the prior case] ... the Court does not believe it would be appropriate to preclude this issue from being litigated in [later] actions."); Strietmatter v. Procter & Gamble Co., 657 F. Supp. 548, 550 (D. N.M. 1983)

("While I do not know how I will rule when presented with this situation [whether to admit evidence with a limiting instruction not given in the first case], it may be that the trial in the present action will afford the Procter & Gamble companies a procedural opportunity which was not available to them in [the prior case] and which may cause a different result."); Herzog v. Lexington Township, 167 Ill.2d 288, 296, 657 N.E.2d 926 (1995) (fact that prejudicial evidence admitted in the first case was not admissible in the second case was a "procedural opportunity" not available in the first case, making application of collateral estoppel unfair).

Here, Ford proffered evidence of in-house testing probative of whether the SCDS with 2-amp fused jumper harness repair is defective. This evidence was excluded by the trial court in Rausch. Hauskins contends that Ford's testing evidence is inadmissible and, therefore, provides no new procedural opportunity. But, because Hauskins did not move to strike any of Ford's testing evidence during summary judgment proceedings, it was properly before the trial court on summary judgment and is part of the record on appeal. RAP 9.12; ER 103; Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC, 139 Wn. App. 743, 756, 162 P.3d 1153 (2007) ("[B]ecause the evidence proffered by SSB in conjunction with its first motion for reconsideration was considered by the trial court, and because the trial court made no ruling on the admissibility of this evidence to which any error has been assigned, the evidence constitutes part of the record before the trial court in ruling on the motion and is, consequently, properly before this court as well"); Lamon v. McDonnell Douglas Corp., 91 Wn.2d 345, 352, 588 P.2d 1346 (1979) ("The record before us, however, does not reveal any motion to

11

strike the affidavit or any portion thereof prior to the trial court's action."). Given that new, favorable testing evidence was proffered by Ford and was not excluded by the trial court, this case offered Ford an important procedural opportunity that was unavailable in <u>Rausch</u>. Application of collateral estoppel in the face of this opportunity worked an injustice against Ford.

Conclusion

Because there is no identity of factual or legal issues between this case and the prior cases and application of collateral estoppel worked an injustice against Ford, the trial court's order granting partial summary judgment based on collateral estoppel was error. We reverse and remand for trial.

*Reversed and remanded.*

WE CONCUR: