IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 83231-0-I |
| SARAH D. JOHNSON, | ) | |
| | ) | DIVISION ONE |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | UNPUBLISHED OPINION |
| WAYNE M. JOHNSON, | ) | |
| | ) | |
| Appellant. | ) | |

BOWMAN, J. — Wayne Johnson argues the trial court erred when it determined collateral estoppel barred him from arguing for a reduction in spousal maintenance and other payments under a property settlement agreement (PSA). We affirm.

## FACTS

Sarah Johnson and Wayne[1] married in 1998. During the marriage, Sarah built a successful business as a high-tier distributor of "wellness products" for AdvoCare. At the time, AdvoCare was a multilevel marketer that used a "pyramid" sales force. Representatives earned nominal fees from direct product sales but generated high levels of income by receiving a percentage of the sales made by the "downline" distributors they recruited into the company.

Wayne eventually quit his job and joined Sarah working for AdvoCare. The two became an upper-tier sales team, routinely earning an income exceeding $85,000 per month. But Sarah grew disillusioned with AdvoCare's

---

[1] For clarity, we refer to each party by first name. We intend no disrespect.

Citations and pin cites are based on the Westlaw online version of the cited material.

culture and work demands and wanted to step back from the business. Wayne dismissed her concerns. Over time, their relationship deteriorated, and Sarah petitioned for dissolution in 2011.

As part of the dissolution proceedings, Sarah and Wayne executed a PSA in which Wayne would make monthly payments to purchase Sarah's interest in AdvoCare and to pay her spousal maintenance. The PSA states:

> Maintenance: The calculation of Spousal Maintenance payable by husband to wife will remain based upon the husband's gross annual income received via his AdvoCare business and verified by the annual, business [tax form] 1099. As long as his income does not decrease (as verified by 1099's for each year) lower than $700,000.00 per year the amount committed to herein shall be paid. If, in fact, the ensuing AdvoCare 1099 verifies a decrease in income below $700,000.00 for a given year, then the amount to be paid herein shall decrease by that same percentage of decrease for the following year and shall then be re-evaluated annually thereafter.
>
> Beginning March 1, 2013 (whether or not the Decree of Dissolution has actually been filed herein) husband shall pay to the wife on the first day of each ensuing month, for a period of eight years, $10,000.00 per month in Spousal Maintenance.
>
> Furthermore, Husband shall pay to the wife on the first of each ensuing month for an additional five years, $5,000.00 per month in Spousal Maintenance, based upon the same terms and conditions.
> . . . .
>
> BUSINESS: ADVOCARE COMMIT2FIT LLC:
>
> One hundred percent (100%) interest ownership in AdvoCare, Commit2FitNow LLC, subject to payment to wife of her equitable interest as follows: the calculation of the wife's equitable interest in the AdvoCare Commit2FitNow LLC, and payable to wife by husband, will be based upon the husband's gross annual income received via his AdvoCare business and verified by the annual, business 1099. As long as his income does not decrease (as verified by 1099's for each year) lower than $700,000.00 per year and the amount committed to herein shall be paid. If, in fact, the ensuing AdvoCare [1099] verifies a decrease in income below

$700,000.00 for a given year then the amount to be paid herein shall decrease by that same percentage of decrease for the following year and then shall be reevaluated annually thereafter.

Beginning March 1, 2013 (whether or not the Decree of Dissolution has actually been filed herein) husband shall pay to the wife on the first day of each ensuing month thereafter, for a period of eight years, $10,000.00 per month.
Furthermore, husband shall pay to the wife on the first day of each ensuing month for an additional five years, $5,000.00 per month, again based upon the same terms and conditions.

Sarah agreed to the terms of the PSA because Wayne assured her, "There is no way I could or would ever try to get the AdvoCare income reduced," and, "There is no way for me to manipulate the AdvoCare income." The court entered a final dissolution decree on April 10, 2013 and incorporated the PSA.

Wayne made the payments as agreed for six years. But in summer 2019, the Federal Trade Commission disbanded AdvoCare's multilevel sales structure. This resulted in substantially reduced income for Wayne from AdvoCare beginning July 2019. From that date forward, he received a commission from only his own direct sales, a negligible figure.

On June 27, 2019, Wayne petitioned the court to terminate his spousal maintenance and buyout payments under the PSA. He argued that both payments "are solely based on [his] earnings at AdvoCare" and that as of July 2019, his "income from AdvoCare is effectively zero."

Sarah objected to Wayne's petition and claimed that "there has been [no] transparency regarding the sale or transfer of the business interest from the AdvoCare business." She insisted Wayne simply moved the AdvoCare downline distributor network to a different multilevel marketing company called Modere.

Sarah submitted portions of Wayne's social media postings that he made to the same distribution network she developed at AdvoCare to show that "recruits from our AdvoCare business followed Wayne to Modere . . . and continue to be a part of his 'downline.' " From this, Sarah argued, "Since the goodwill from the AdvoCare business is still profitable for [Wayne], he should comply with his obligations to pay spousal support and property division payments" under the PSA.

Wayne admitted to relying on his reputation and contacts at AdvoCare in launching Modere. He also agreed that some prior AdvoCare downline distributors joined him at Modere, telling the court that the " 'business opportunity' that we used to market as AdvoCare distributors . . . is still a viable option for anyone who chooses to join us in the Modere business." But Wayne claimed Modere had a "completely different identity and product line than AdvoCare."[2] Wayne also argued that his Modere income "should not be relevant at this point. The obligation to pay Sarah for her 'equity' in AdvoCare is solely based on the income received from AdvoCare."

After considering financial affidavits and declarations from both parties, the court entered a final order on September 20, 2019. The commissioner agreed with Sarah and imputed Wayne's income from Modere in applying the terms of the PSA.[3] The court denied Wayne's petition to terminate maintenance

---

[2] According to Wayne, Modere products are "more skin care, beauty and anti-aging" than AdvoCare's "athletic and sports performance" products.

[3] The evidence showed that as a distributor for AdvoCare, Wayne earned as much as $939,557.00 per year. And his income of $464,299.38 from AdvoCare in the first six months of 2019 reflected this same pattern. Wayne's financial records also revealed he received $66,574.63 in income from Modere between July and August 2019.

and buyout payments and ordered that he continue to pay $10,000 per month for each obligation. The parties stipulated neither would seek to revise the commissioner's final order.

Wayne continued making payments under the PSA until March 2021. He then notified Sarah that he was invoking the PSA provision allowing reduced payments if his tax forms reflected less than $700,000 in net income per year from AdvoCare. Wayne paid Sarah only $170 for the month of March, so she initiated contempt proceedings. Sarah asked the court, among other things, to "[c]onfirm that the issue of support was already litigated requiring Wayne to continue his spousal support and business buyout payments using all of [his] income, regardless of source, to calculate any reduction."

A King County Superior Court commissioner heard the case on June 7, 2021. The commissioner determined that Wayne was not in contempt but that his "income from Advo[C]are has simply transferred to Modere in substantial part." As a result, the court again enforced the terms of the PSA, requiring Wayne to pay Sarah $10,000 in monthly spousal support and $10,000 in buyout payments retroactive to March 2021.

Wayne moved for revision, but a judge[4] declined to revise the commissioner's contempt order. The superior court ruled that the September 20,

---

[4] Under RCW 2.24.050:

> All of the acts and proceedings of court commissioners hereunder shall be subject to revision by the superior court. Any party in interest may have such revision upon demand made by written motion, filed with the clerk of the superior court, within ten days after the entry of any order or judgment of the court commissioner. Such revision shall be upon the records of the case, and the findings of fact and conclusions of law entered by the court commissioner.

2019 ruling estopped Wayne from arguing that his reduction in AdvoCare income relieved him of his obligations under the PSA. The court also awarded Sarah attorney fees and costs. The court later denied Wayne's motion to reconsider its ruling on revision.

Wayne appeals.

ANALYSIS

Collateral Estoppel

Wayne argues the trial court erred by ruling collateral estoppel barred him from arguing for a reduction in maintenance and buyout payments under the PSA. We disagree.

A superior court judge reviews a commissioner's ruling de novo based on the evidence and the issues presented to the commissioner. RCW 26.12.215; RCW 2.24.050; In re Marriage of Moody, 137 Wn.2d 979, 992-93, 976 P.2d 1240 (1999). On appeal, we review the superior court's decision, not the commissioner's. In re Estate of Wright, 147 Wn. App. 674, 680, 196 P.3d 1075 (2008). We review a trial court's application of collateral estoppel de novo. Christensen v. Grant County Hosp. Dist. No. 1, 152 Wn.2d 299, 305, 96 P.3d 957 (2004).

Collateral estoppel bars a party from raising a previously litigated issue against the same party in a subsequent proceeding. Christensen, 152 Wn.2d at 306. The doctrine promotes judicial economy, provides finality in adjudication, avoids inconsistent rulings, and encourages respect for judicial decisions. Id. at 306-07; Anfinson v. FedEx Ground Package Sys., Inc., 174 Wn.2d 851, 861, 281

P.3d 289 (2012). Collateral estoppel is satisfied where 1) the issue decided in the prior adjudication is identical to the one presented in the second action, 2) the prior adjudication ended in a final judgment on the merits, 3) the party against whom the doctrine is asserted was a party or in privity with the party to the prior adjudication, and 4) application of the doctrine does not work an injustice. Thompson v. Dep't of Licensing, 138 Wn.2d 783, 790, 982 P.2d 601 (1999).

Wayne contends the first and fourth elements do not satisfy collateral estoppel because the issues raised in 2019 and 2021 are not identical and applying the doctrine would work an injustice. Issues are identical if they have substantially similar facts and the same legal rules control in the two proceedings. State Farm Fire & Cas. Co. v. Ford Motor Co., 186 Wn. App. 715, 723, 346 P.3d 771 (2015). In determining whether applying collateral estoppel would work an injustice, we focus on whether the parties to the earlier adjudication received a full and fair opportunity to litigate their claim in a neutral forum. Nielson v. Spanaway Gen. Med. Clinic, Inc., 135 Wn.2d 255, 264-65, 956 P.2d 312 (1998). "The injustice component is generally concerned with procedural, not substantive irregularity." Christensen, 152 Wn.2d at 309.

Here, the record shows that in 2019, Wayne argued that the court should terminate his obligation to make spousal maintenance and buyout payments under the PSA because "[b]oth payments are solely based on [his] earnings at AdvoCare," and "[a]s of July 17, 2019, [he] will no longer receive substantial income from AdvoCare." Wayne asserted the PSA "was not tied to [his] earning capacity or history but was secured solely by the AdvoCare income." The court

7

rejected Wayne's argument and agreed with Sarah that Wayne's Modere income generated largely from transferring AdvoCare's downline distribution network and that it should impute that income in determining Wayne's obligations under the PSA:

> The Court disagrees with the father, as far as the interpretation of the [PSA], and does agree with the mother that it is subject to modification, but is not convinced, based upon the income determination that the Court has found, that a modification is justified in this particular instance, and so I will order the $10,000 a month maintained in the worksheet as income to the mother and payable by the father at this point in time.

Wayne argued the same position in the 2021 contempt proceeding. He claimed that the court should reduce his obligation to make spousal maintenance and buyout payments under the PSA because his AdvoCare income fell below $700,000 per year. Wayne told the court:

> My obligation to pay, whether as maintenance or as equity installments for AdvoCare, was tied directly to AdvoCare's continuing economic performance in the future years. This fact has never been modified or changed. Once my AdvoCare revenues fell completely off, through no fault of mine, then so did my obligations under the Decree.

Because the courts in 2019 and 2021 considered substantially the same facts and applied the same controlling legal rules, the superior court on revision did not err in determining that the issues were identical and barred by collateral estoppel.

Wayne also fails to show that estopping him from arguing for a payment reduction based on his AdvoCare income leads to an injustice. According to Wayne, "he did not have the opportunity to fully present his defense to contempt

in 2021: when he invoked the reduction formula for the first time."[5]  But, again, the record shows that Wayne invoked the "reduction formula" in 2019 when he petitioned to terminate his payment obligations under the PSA.  And after considering several financial affidavits, hundreds of pages of documentary evidence, and extensive declarations and briefing, the court rejected his argument.

Attorney Fees

Sarah asks for an award of attorney fees on appeal.  We may order a party to pay the other party's attorney fees and costs associated with the appeal of a dissolution action under RCW 26.09.140.  In exercising our discretion, we consider the arguable merit of the issues on appeal and the parties' financial resources.  In re Marriage of King, 66 Wn. App. 134, 139, 831 P.2d 1094 (1992). In considering the financial resources of both parties, we balance the needs of the requesting party against the other party's ability to pay.[6]  In re Marriage of Trichak, 72 Wn. App. 21, 26, 863 P.2d 585 (1993).  Here, Sarah shows that she has financial need and that Wayne has the ability to pay.  We grant her request for attorney fees on appeal subject to her compliance with RAP 18.1.

Sarah also seeks an award for the costs she incurred in supplementing the record with a verbatim report of the 2019 proceedings.  She argues the transcript was necessary for our review, and Wayne's failure to provide the report

---

[5] Wayne suggests that in 2019, the court did not have his 1099 tax form for 2020 showing that his income from AdvoCare fell under $700,000.  But Sarah did not contest that Wayne received reduced income from AdvoCare.  Instead, the parties disputed whether the court should impute his income from Modere as AdvoCare income.

[6] On May 27, 2022, Wayne provided an untimely financial declaration along with a motion to extend the time to file.  We grant the motion.

forced her to incur the cost of transcription to present the court with a complete record.

RAP 14.2 provides for an award of costs to Sarah as the party who substantially prevailed on review. And as the party seeking appellate review, Wayne bore the burden of providing us with all the evidence relevant to the issues he raised. Starczewsky v. Uniguard Ins. Grp., 61 Wn. App. 267, 276, 810 P.2d 58, review denied, 117 Wn.2d 1017, 818 P.2d 1099 (1991); see also Brothers v. Pub. Sch. Emps. of Wash., 88 Wn. App. 398, 409, 945 P.2d 208 (1997) (it is the appellant's burden to produce a record from which we can decide the issues on appeal). Because Wayne failed to provide a portion of the record relevant and necessary to resolve an issue he raised on appeal, Sarah may recover this cost subject to her compliance with RAP 18.1.

Affirmed.

Brennan, J.

WE CONCUR: